REVISED February 8, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-41476

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2008

Charles R. Fulbruge III
Clerk

LINDA AMEZQUITA

Plaintiff-Appellant

V.

BENEFICIAL TEXAS, INC

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:02-CV-77

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Linda Amezquita initiated this action against her former employer, Beneficial Texas, Inc. ("Beneficial"), and Household Bank FSB ("Household"), asserting a litany of claims related to her termination, including discrimination in violation of Title VII and defamation. Most of Amezquita's claims were disposed of on summary judgment, but her Title VII sex

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

discrimination claim survived and proceeded to trial.  At the conclusion of Amezquita's presentation of evidence, Beneficial and Household successfully moved for judgment as a matter of law ("JMOL") on two grounds, viz., (1) that Household should be dismissed as a defendant, and (2) because Amezquita had failed to establish a prima facie case of discrimination, and even assuming, arguendo, that she made such a showing, she had failed to introduce sufficient evidence of pretext. Amezquita appeals, challenging the district court's (1) grant of summary judgment dismissing her defamation claim, (2) grants of JMOL on both grounds, and (3) denial of her motion to reopen her case-in-chief. We affirm all challenged rulings of the district court.

## I. FACTS AND PROCEEDINGS

Amezquita was hired in 1998 by Household Finance Corporation, which soon thereafter merged with Beneficial.  Her job as an account executive was to solicit and sell home equity loans and related insurance.  Within a year after her hiring, Amezquita was promoted to senior account executive in Beneficial's Laredo office, where Ricardo Torres was the branch manager.

In or around November of 1999, Lauro Gonzalez, Beneficial's district manager, learned that the employees working in the Laredo branch had complained of a negative workplace environment.  Gonzalez conferred with his supervisor, Steve Pummill, and the two men decided to investigate the office environment by interviewing the employees, including Amezquita, Torres, Claudia Rangel (another senior account executive), and Luz Montes-Perez (a sales assistant).

Pummill interviewed Amezquita on January 28, 2002, in Gonzalez's presence.  Before beginning the interview, Pummill instructed Amezquita that she needed to be both truthful and cooperative during the investigation. Pummill focused his questions to Amezquita on four issues of concern.  First, he asked her whether she and Torres were involved in a sexual relationship, as

other employees had reported that the two were close and that she had received preferential treatment. Amezquita denied that such a relationship existed. Second, Pummill questioned Amezquita about an incident involving her and her co-worker, Rangel, which had reportedly occurred in the Laredo office break room. Pummill had been told that Amezquita had confronted Rangel to discuss, among other things, who should take credit for certain loan applications and that, during the confrontation, Amezquita had placed a chair against the break room door, which prevented the door from being opened. Amezquita replied that the incident "never happened." Third, Pummill asked Amezquita if she had ever yelled in the office in front of customers. She admitted that she had yelled, adding that all of the employees had too; however, she denied ever having done so in the presence of customers. And, fourth, Pummill asked Amezquita whether she had allowed personal friends to visit her in the office during business hours. She admitted that she had, again adding that other employees also had friends visit and insisting that her friends always stayed less than an hour.

That same day, Pummill questioned Torres, Rangel, and Montes-Perez about the same topics. They answered Pummill's questions consistently with one another but differently than Amezquita. Specifically, Torres, Rangel, and Montes-Perez said that the break room incident had occurred, that Amezquita had yelled in the office in front of customers, and that her visitors had sometimes stayed for up to two hours.

Pummill decided to re-question Amezquita the following day because of the inconsistencies between her responses and those of the other employees. He again informed her that she needed to be truthful, this time cautioning that she could be terminated if she were not. After Amezquita answered Pummill's questions the same as she had the previous day, he concluded that she was lying and thereby impeding Beneficial's investigation. As a result, Amezquita was fired. Pummill also determined that Torres should no longer serve as branch

manager because of (1) the employee misconduct that he had permitted and (2) the overall negative workplace environment that existed under his supervision. And, Torres was demoted to account executive and transferred to Beneficial's San Antonio office.

Amezquita filed suit against Beneficial and Household, asserting myriad claims, most of which were disposed of after the defendants moved for summary judgment. The district court did not, however, grant summary judgment to the defendants on Amezquita's Title VII claim because it determined that there was a fact question as to the real reason for her termination, viz., whether it was because (1) Pummill believed that she had been untruthful (the reason given by the defendants) or (2) Pummill believed that she was engaged in a sexual relationship with Torres (which she maintained was the defendants' real reason).

At the completion of Amezquita's presentation of evidence on her Title VII claim, Beneficial and Household moved for JMOL on two grounds, both predicated on the legal insufficiency of the evidence. They moved to dismiss Household, a named defendant, because Amezquita had failed to adduce evidence supporting her allegation that Household was her employer. In response, Amezquita sought to reopen her case-in-chief to introduce the deposition testimony of Laura Soderberg in an effort to establish the employer-employee relationship, but the court denied the request and dismissed Household as a matter of law.

The defendants also moved for JMOL because (1) Amezquita had failed to establish a prima facie case of discrimination under the McDonnell Douglas framework, and (2) even assuming, arguendo, that she had established a prima facie case, she had failed to produce any evidence casting doubt on Beneficial's legitimate, non-discriminatory reason for terminating her. The district court granted the motion in favor of Beneficial, and entered a final judgment of

dismissal. Following the denial of Amezquita's motion for a new trial, she timely filed a notice of appeal.

## II. ANALYSIS

A. Summary Judgment

We review the district court's decision to grant Beneficial and Household's motion for summary judgment de novo, applying the same standard as the district court.[1] "Summary judgment is proper when the evidence demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[2]

Amezquita asserts that the district court improperly granted summary judgment on her defamation claim, insisting that Beneficial and Household had published unprivileged defamatory statements to the Frick Company—the entity that processes Beneficial's unemployment compensation claims—which statements imputed to Amezquita the commission of a crime. Amezquita maintains that Pummill's investigation report—specifically, the portion stating that Amezquita locked Rangel in the break room—effectively accused her of violating Texas Penal Code § 20.02.[3] We conclude that the district court applied the proper legal standards to the relevant facts and reached the correct result with respect to Amezquita's defamation claim.

Texas law provides that employers have a privilege that attaches to "communications made in the course of an investigation following a report of employee wrongdoing," which privilege persists "as long as communications pass

---

[1] Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006).

[2] Id. (quoting FED. R. CIV. P. 56(c)).

[3] TEX. PENAL CODE ANN. § 20.02(a). A person commits an offense if he intentionally or knowingly restrains another person.

only to persons having an interest or duty in the matter to which the communications relate."[4] This privilege may be defeated by proof that the statement in question was made with actual malice, which occurs "when the statement is made with knowledge of its falsity or with reckless disregard as to its truth."[5]

We hold that the communications in question between Beneficial and the Frick Company are privileged. Pummill reported to the Frick Company the results of his workplace investigation, including the disputed incident involving Amezquita and Rangel.[6] Notably, he reported that Rangel was in the break room making coffee when Amezquita entered and placed a chair against the door, tilting the chair so that its back was below the door handle. Pummill also stated in his report to the Frick Company that Torres tried to enter the break room but could not because the door was barred. Pummill reported only what was told to him by Rangel and corroborated by Torres. Moreover, his report even included Amezquita's insistent denial that the incident occurred. Amezquita offered no evidence indicating that Pummill misreported what he was told or that he knew that what he reported was false. For purposes of showing actual malice, it is inconsequential whether Pummill's statements to the Frick Company were true; it only matters that he neither knew the statements were false nor disregarded their lack of veracity. Moreover, Beneficial only sent the communications in question to persons who had an interest and a duty in the outcome of the investigation. Accordingly, Beneficial and Household established that the statement in question was privileged and that it was communicated without actual malice. As such, dismissal of her defamation claim was proper.

---

[4] Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995).

[5] Id.

[6] Pummill's notes from his interviews with the Laredo office employees comprise the communications in question that Beneficial "reported" to the Frick Company.

## B.    Judgment as a Matter of law

We review de novo the district court's decisions to grant Beneficial and Household's motions for JMOL, applying the same standard as the district court.[7] "Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'"[8] We review the record in the light most favorable to the nonmovant, drawing all factual inferences in favor of the nonmoving party and leaving credibility determinations, the weighing of the evidence, and the drawing of reasonable inferences from the facts to the jury.[9]

Amezquita contends that the district court erred in dismissing Household as a matter of law because Beneficial and Household should be treated as a single employer. Specifically, she argues that Beneficial and Household judicially admitted in their answer that Household terminated Amezquita and that, as only employers can dismiss employees, this admission establishes that Household is a proper defendant.[10] Our review of the record on appeal reveals no evidence that Amezquita made this argument to the district court.

---

[7] Anthony v. Chevron USA, Inc., 284 F.3d 578, 583 (5th Cir. 2002).

[8] Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994) (quoting FED. R. CIV. P. 50(a)).

[9] Id.

[10] At the district court level, Amezquita moved for a new trial, contending that the court erred in dismissing Household because it was a single employer with respect to her. Specifically, she argued that the extensive testimony of Lauro Gonzalez established the link between Household and Beneficial. As this argument is not offered by Amezquita on appeal, we do not address it.

Arguments not raised at the district level are waived.[11]  Alternatively, even if Amezquita had properly raised this argument, though, we would not be persuaded.  Amezquita points to no authority supporting her contention that Household must be held to have employed her simply because it admitted to having terminating her employment.  In addition, Amezquita's brief does not offer any analysis of the four factors that we have recognized as relevant to a determination whether distinct entities constitute a single employer.  Neither does she offer any analysis as to how Household's purported judicial admission bears on these factors.[12]  Having examined the relevant factors, the arguments advanced before the district court, and the record evidence, we are convinced that the district court's decision to dismiss Household as a matter of law was proper.

We also hold that the district court properly granted JMOL in favor of Beneficial on Amezquita's Title VII claim.  To establish a prima facie case of discrimination under Title VII, a plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for the position that he lost; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or other similarly situated persons were treated more favorably.[13]  If (but only if) an employee successfully establishes a prima facie case, the burden of production shifts to the employer to produce evidence of a legitimate,

---

[11] Lemaire v. Louisiana Dep't of Transp. and Dev., 480 F.3d 383, 387 (5th Cir. 2007); In re Goff, 812 F.2d 931, 933 (5th Cir. 1987) (noting, though, that an issue may be raised for the first time on appeal only if it is a purely legal one and if consideration is necessary to avoid a miscarriage of justice).

[12] The four factors that we have identified are: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983).

[13] Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

non-discriminatory reason for the alleged adverse employment action.[14] Then, if the employer produces evidence of a non-discriminatory reason, the employee must offer sufficient evidence that the reason offered by the employer was not its true reason, but was pretext for discrimination; or that the employer's reason, while true, was only one of the reasons for its conduct, and another motivating factor was the employee's protected characteristic.[15]

Amezquita argues for the first time on appeal that she made a prima facie showing of the fourth element, i.e., that Juan Medina, a male, replaced her. Amezquita did not raise this argument at trial; in fact, she expressly conceded that she had not presented any evidence that a man had replaced her. Facts not presented at trial may not be asserted on appeal.[16]

In the alternative, Amezquita contends that the fourth element has been established by reasserting that she was treated less favorably than her similarly situated co-worker, Ricardo Torres. Amezquita maintains that she was discriminated against—treated less favorably—because of her sex, as she was terminated because of her suspected sexual relationship with Torres, but he was merely demoted. The district court found, and we agree, that Amezquita was not similarly situated to Torres and that the misconduct that led to his demotion was not nearly identical with that which led to her termination. Evidence presented at trial established that Amezquita was a senior account executive in Beneficial's Laredo office and that Torres was her immediate supervisor. Indeed, Torres was the branch manager—the only management personnel in the Laredo office—and his supervisor was Lauro Gonzalez. Such distinction in position and supervision has been held sufficient to establish that two persons

---

[14] Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

[15] Id.

[16] Garcia v. Am. Marine Corp., 432 F.2d 6, 8 (5th Cir. 1970).

are not similarly situated.[17] In addition, Beneficial and Household presented evidence establishing that Amezquita was fired because Pummill and Gonzalez believed that she was lying and impeding the investigation but that Torres was demoted because of his poor managerial performance. Amezquita offered neither evidence to the contrary nor evidence indicating that Torres was thought to have been dishonest or to have impeded the investigation yet was treated more favorably. Rather, she offered only her unsubstantiated self-serving conclusion that her alleged sexual relationship with Torres was the misconduct for which they both were punished. Amezquita failed to offer evidence sufficient to demonstrate that her misconduct was nearly identical to that of Torres. Conduct is "not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer."[18]

Furthermore, even if we should hold (which we do not) that Amezquita had established a prima facie of discrimination, we would conclude that she failed to introduce sufficient evidence of pretext on the part of Beneficial. As we just observed, Beneficial offered substantial evidence that its legitimate, non-discriminatory reason for terminating Amezquita was management's belief that she had lied and impeded the company's investigation of its Laredo office's work environment. Amezquita attempts to demonstrate pretext based on nothing more than her unsubstantiated assertion that she did not lie during her interviews and by insisting, without substantiation, that her rumored relationship with Torres was the real cause of her termination. Whether Pummill and Gonzalez were wrong to believe that she was lying, though, is irrelevant, as even an employer's incorrect belief in the underlying facts—or an

---

[17] See, e.g., Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 302-03, 305 (5th Cir. 2000).

[18] Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001) (citing Wyvill, 212 F.3d at 304-05) (emphasis added).

improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination.[19]  In addition, Amezquita failed to introduce evidence sufficient to cast doubt on Beneficial's legitimate, non-discriminatory reason.  She offered no compelling evidence linking her alleged relationship with Torres to her termination and offered no evidence demonstrating that Pummill even believed that such a relationship existed.  Without more than her unsupported assertion that she was terminated because of her suspected relationship, the district court properly concluded that there was not sufficient evidence for a jury to find pretext.

## C.   Motion to Reopen

We review the district court's decision to deny Amezquita's motion to reopen for an abuse of discretion.[20]  We will not disturb the district court's decision in the absence of a showing that it has worked an injustice in the cause.[21]

On appeal, Amezquita alleges that if her motion to reopen had been granted, she would have introduced evidence establishing that Household was her employer.  Specifically, she asserts that she would have introduced documentation showing that Household opposed her claim for unemployment benefits before the Texas Workforce Commission ("TWC"), a proceeding in which, she maintains, Household acted and represented itself as her employer.[22]

---

[19] Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

[20] Garcia v. Women's Hosp. of Texas, 97 F.3d 810, 814 (5th Cir. 1996).  Even though this issue is ultimately moot based on our conclusion that the district court properly granted JMOL on Amezquita's Title VII claim, we take this opportunity to affirm the district court's decision in accordance with the following reasoning.

[21] Id.

[22] In the district court, Amezquita contended that deposition testimony revealed that Laura Soderberg, acting on behalf of Household, participated in the decision to terminate Amezquita, thereby establishing the employment relationship between Household and

Having reviewed the record on appeal, we find no evidence that Amezquita advanced this argument before the district court. In addition, her argument relies on evidence not presented at trial. Her attempt to supplement the record with the TWC documents after trial was denied because she failed to submit them at trial, never included them in her exhibit list, and never offered them in her case-in-chief or made an offer of proof. As such, Amezquita's argument and exhibit are not properly before us. Even if Amezquita had properly raised the argument and introduced the evidence, though, we would not be persuaded. When deciding whether to grant a party's motion to reopen, the district court considers the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the nonmoving party.[23] Amezquita fails to analyze—or even mention—these factors in her brief, thus offering no explanation for her failure to introduce the evidence earlier. In addition, the TWC documentation that identifies Household as Amezquita's employer was not completed by Household, and, as such, is of questionable probative value. We are satisfied that the district court did not abuse its discretion in denying Amezquita's motion to reopen.

## III. CONCLUSION

The district court properly granted summary judgment in favor of Beneficial and Household on Amezquita's defamation claim, as the relevant communications between Beneficial and the Frick Company were privileged. The district court properly granted JMOL in favor of both defendants as well: Amezquita failed to present evidence sufficient to establish that Household was her employer; she also failed to establish a prima facie case of sex

---

Beneficial. As Amezquita apparently abandons this argument on appeal, we do not address it.

[23] Garcia, 97 F.3d at 814.

discrimination. And, even if we were to assume, arguendo, that she had met the prima facie case requirement, she failed to offer sufficient evidence of pretext. Finally, the district court did not abuse its discretion in denying Amezquita's motion to reopen. All rulings of the district court contested by Amezquita on appeal are

AFFIRMED.