United States Court of Appeals

Fifth Circuit.

No. 95-20727.

Monica M. GARCIA, Plaintiff-Appellant,

v.

WOMAN'S HOSPITAL OF TEXAS, Defendant-Appellee.

Oct. 22, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, DeMOSS and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Monica Garcia appeals the district court's grant of judgment as a matter of law to her former employer on her claim of pregnancy discrimination under Title VII.  Finding error, we REVERSE the judgment of the district court and REMAND this case for further proceedings in accordance with this opinion.

I. Facts and Summary of Proceedings

Woman's Hospital of Texas (hereinafter Hospital or employer) hired Garcia on April 22, 1991 as a licensed vocational nurse (LVN) in its Family Care Center Unit, a combined postpartum and newborn nursery unit.  In December 1992, Garcia learned she was pregnant with what would be her first child.  In January 1993, she began to experience pregnancy-related complications including dehydration and chronic vomiting and, as a result, took a medical leave of absence beginning January 28.  By the end of February, her

condition had improved and Garcia felt she was ready to return to work. Her obstetrician, Dr. Debra Gunn, agreed and cleared her to return to work in a March 1 letter sent to Judith Squyres, the Hospital's occupational health nurse. The letter did not go into detail, but stated: "It is recommended that Ms. Garcia may return to work on 3/1/93." Dr. Gunn, incidentally, also worked for the Hospital in obstetrics and was familiar with Garcia's job duties. At no time did Dr. Gunn warn Garcia that she was in any way restricted by her pregnancy in the tasks she could perform upon her return to work.

The Hospital initially informed Garcia that it would return her to the duty roster, but after some in-house discussion it delayed her return. It sent to Dr. Gunn a form purporting to recite all of Garcia's job requirements and asked her to place a check mark next to any requirement that Garcia could not meet because of her pregnancy. Dr. Gunn checked a box indicating that Garcia was not to "push, pull, lift, and support over 150 lbs." Upon receipt of the form from Dr. Gunn, the Hospital informed Garcia that she could not return to work because of a Hospital policy disallowing employees on medical leave to return with any medical restrictions. Another Hospital policy provided that employees on medical leave more than six months were to be discharged. After six months, Garcia would be in her eighth month of pregnancy and still under the medical restriction. Pursuant to the Hospital policy, Garcia was effectively terminated.

Garcia sued the Hospital in the United States District Court for the Southern District of Texas alleging that the Hospital's policies constituted a violation of Title VII of the 1964 Civil Rights Act, as amended by the Pregnancy Discrimination Act of 1978.[1] She contended that the lifting requirements listed on the form sent to her obstetrician were artificial in that no nurse was actually required to lift that amount at work. The hospital confessed that it did not test Garcia when it hired her to ascertain whether she could in fact lift that amount, that it does not test any job applicants, and that it does not test current employees either. The hospital maintains, nevertheless, that the requirements are bona fide.

The district court denied a motion by the Hospital for summary judgment finding that Garcia could establish a prima facie case of disparate treatment under Title VII. At the conclusion of Garcia's case at trial, however, the court granted the Hospital's Rule 50 motion on the basis that the Hospital applied its policy of requiring employees to return to work without restrictions to all employees equally. Garcia asked the court at this time to allow her to reopen her case to permit the testimony of Dr. Gunn, who had been subpoenaed but was temporarily out of town. The court impliedly denied this motion and entered judgment for the Hospital.

---

[1]Garcia also alleged in her complaint that the Hospital's actions violated the Americans with Disabilities Act. The district court dismissed this claim on the first day of trial, however, and Garcia does not contest this dismissal in her appeal.

Garcia appeals.

## II. Standard of Review

We review *de novo* the lower court's grant of judgment as a matter of law under Rule 50. *Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993). We consider all of the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* If the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict, then we will conclude that the motion should have been granted. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

## III. Discussion

### A. Pregnancy Discrimination Claims Under Title VII

Title VII of the 1964 Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1978, the Congress passed the Pregnancy Discrimination Act (PDA) which amended the definition of "sex" as follows:

> The terms "because of sex" or "on the basis of sex" include but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical

4

> conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k). The PDA did not amend Title VII in any other way. Therefore, in analyzing a claim of pregnancy discrimination we apply the same rules used for discrimination claims in general.

There are different theories by which a plaintiff can make out a claim of discrimination under Title VII. In *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court held that Title VII bans not only intentional discrimination (so-called disparate treatment), but also those employment practices that result in disparate impact. Disparate impact claims, the Court stated, involve employment practices "that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group and cannot be justified on business necessity." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977). A plaintiff proceeding under this theory need not offer proof of discriminatory motive to make out her prima facie case. *Griggs,* 401 U.S. at 430-32, 91 S.Ct. at 853-54. She must, however, isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994-95, 108 S.Ct. 2777, 2788-89, 101 L.Ed.2d 827 (1988). At this point the employer can respond

5

with evidence that the "challenged practice is job-related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i).

At trial, Garcia pointed to the Hospital's lifting requirement as the employment practice that was the cause of the disparity. She must also prove causation, however, and for this needed testimony to the effect that the 150-pound lifting requirement would cause pregnant women as a group to be forced onto unnecessary medical leave and, because of the six-month limit on medical leave, to be terminated. It would, of course, be insufficient for a claim under Title VII if Garcia were the only pregnant woman adversely affected; she must show that pregnant women as a group would be subject to this medical restriction. If all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds, then they would certainly be disproportionately affected by this supposedly mandatory job requirement for LVN's at the Hospital. Statistical evidence would be unnecessary if Garcia could establish this point. Should she establish her prima facie case, the burden would then shift to the Hospital to prove that the lifting requirement was job related and consistent with business necessity. The PDA does not mandate preferential treatment for pregnant women and that is not what Garcia is seeking. If the lifting requirement is found to be bona fide, then Garcia loses.

The district court granted the Hospital's Rule 50 motion on the basis that Garcia had not made out a claim for disparate

6

treatment. As the preceding discussion makes plain, however, Garcia can proceed under a number of theories, including disparate impact. The district court erred by not considering this theory, among others, in granting the Hospital's Rule 50 motion.[2] However, the district court committed additional error as well.

## B. Garcia's Motion to Reopen

Upon the conclusion of Garcia's case at trial, the Hospital moved for judgment under Rule 50. The court held a hearing on the motion and stated the following:

> Well, let me just say, I think the motion is appropriate under the evidence. I think that the problem is this, if an individual—there were testimony that no doctor permitted his client, once confirmed pregnant, to ever lift more than 150 pounds, not do that, then we have got something that is unique and specific to pregnant women. I don't know if that makes a difference or not. But it seems to me that it would make a difference because there is not a pregnant woman working at the hospital who would be permitted, at least, to pick up 150 pounds according to a doctor....

Record, vol. IV, pgs. 107-08. At this point, Garcia moved the court to allow her to reopen her case to obtain the testimony of Dr. Gunn, who had been subpoenaed but failed to appear. The district court denied this motion and granted the Hospital's motion to dismiss under Rule 50.

We review for abuse of discretion a district court's ruling on a party's motion to reopen its case for the presentation of additional evidence. *Zenith Radio Corp. v. Hazeltine Research,*

---

[2]In addition to our discussion of disparate treatment, the district court should consider pretextual disparate treatment as well as facial disparate treatment.

7

*Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). The court's decision "will not be disturbed in the absence of a showing that it has worked an injustice in the cause." *Gas Ridge, Inc. v. Suburban Agric. Properties, Inc.,* 150 F.2d 363, 366 (5th Cir.1945), *cert. denied,* 326 U.S. 796, 66 S.Ct. 487, 90 L.Ed. 485 (1946). Among the factors the trial court should examine in deciding whether to allow a reopening are the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party. *See Rivera-Flores v. Puerto Rico Telephone Co.,* 64 F.3d 742, 746 (1st Cir.1995); *Hibiscus Assocs. v. Board of Trustees of Policemen and Firemen Retirement Sys.,* 50 F.3d 908, 917-918 (11th Cir.1995); *Joseph v. Terminix Int'l Co.,* 17 F.3d 1282, 1285 (10th Cir.1994). While we are reluctant to disturb the decision of the district court in an area peculiarly within its scope of expertise, we believe that its decision here has worked an injustice and therefore must be reversed. We come to this decision by applying the factors listed above.

"Trial courts as a rule act within their discretion in refusing to reopen a case where the proffered "new" evidence is insufficiently probative to offset the procedural disruption caused by reopening." *Rivera-Flores,* 64 F.3d at 746. The evidence here could not be more probative or essential for Garcia's case. This

8

is especially true given that the district court suggested that its judgment might be based on the lack of that evidence. As we mention above in our discussion of disparate impact claims, Garcia needed to establish the element of causation. Had Dr. Gunn testified that no pregnant woman would be advised by her doctor to lift 150 pounds, this would have been sufficient to establish that element and, as a result, Garcia's prima facie case under the Act. We find, therefore, that the probity factor counsels the reopening of her case.

We also determine that Garcia's reason for failing to introduce the doctor's testimony at trial was bona fide. Should a district court conclude that a litigant is engaging in any form of chicanery, it properly denies the motion. The same result obtains where the litigant was negligent in failing to introduce the evidence. Here, Garcia's subpoenaed witness did not show up to testify. She was in Atlanta, due back in Houston two days later. Garcia made a motion at the beginning of trial to be permitted to present Dr. Gunn's testimony sometime after the conclusion of her own case in chief; the record reveals that this motion was not ruled upon. Nevertheless, it shows that Garcia was aware of the problem and sought to correct it. Further, Garcia offered to call her subpoena server to testify that Dr. Gunn had in fact been served. We find that this factor weighs in Garcia's favor.

Finally, we do not see where the defendant would have been unduly prejudiced by allowing Garcia to reopen her case for the

sole purpose of providing this testimony.  While there is always the possibility of some prejudice in that additional testimony is being introduced against the non-moving party, our concern is with undue prejudice.  Here, Garcia made her motion to reopen after her concluding her case but before the Hospital had begun its presentation of evidence.  Had the court granted the motion, Garcia stated that she could put Dr. Gunn on the stand the following morning, delaying the presentation of the Hospital's case by about a day.  Garcia's satisfaction of this factor is less clear than the others, but we find that the Hospital would incur no undue prejudice from the reopening.  Weighing these factors, we find an abuse of discretion in denying the motion.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court dismissing Garcia's Title VII claim under Rule 50 is REVERSED and this case is REMANDED for further proceedings in accordance with this opinion.