**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 21, 2011

No. 09-60384

Lyle W. Cayce
Clerk

KIRBY TATE,

Plaintiff - Appellant

v.

EARNESTINE STARKS, Sergeant, Unit 29-B, in Her
Individual and Official Capacity; REGINA CAPLERS,
Lieutenant, Disciplinary Officer, in Her Official Capacity;
RICKY SCOTT, CID Investigator, in His Individual and
Official Capacity; CHRISTOPHER B EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS, In His Individual
and Official Capacity; EMMITT SPARKMAN, Deputy Commissioner
of Institutions of Mississippi Department of Corrections, in His
Individual and Official Capacity; LAWRENCE KELLY, Superintendent,
Mississippi State Penitentiary, in His Official Capacity; MARELYN
STURDIVANT, Unit 29-A, Case Manager, in Her Official Capacity;
LYNETTE JORDAN, Director of Offender Services, In Her Official
Capacity; VERLENA FLAGGS, Associate Warden, Unit 29, in Her
 Official Capacity; JAMES BREWER, Warden, Unit 29, In His Official
Capacity; WILLIE FULLER, Lieutenant, Unit 29 in Her Official
Capacity; MARVIN OVERSTREET, CID Chief, Mississippi State
Penitentiary, in His Official Capacity; PAMELA ROBINSON,
Classifications, Acting Case Manager, Unit 32, in Her Official
Capacity; JIM NORRIS, Attorney, Mississippi Department of
Corrections Legal Counsel; KEN NORTH, CID Director, in His
Official Capacity; UNKNOWN SHIVERS, Unit 32-A, Case
Manager; MISSISSIPPI DEPARTMENT OF CORRECTIONS; JO ANN
SHIVERS,

Defendants - Appellees

No. 09-60384

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:08-CV-73

---

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Mississippi prisoner Kirby Tate brought suit against prison officials for placing him in super-maximum security, solitary confinement for two years without satisfying due process requirements. Tate appeals the district court's grant of the defendants' summary judgment motion and the denial of his motion to reopen. We AFFIRM in part and VACATE in part the district court's grant of summary judgment, and VACATE the denial of the motion to reopen. We REMAND the case to the district court for further proceedings.

I.

Kirby Tate was sentenced to sixty years of imprisonment without the possibility for parole after being convicted of intent to distribute one half pound of marijuana.[1] Until February 22, 2008, Tate's prison classification was "B

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] On January 28, 1991, Tate pleaded guilty to two counts of sale of marijuana less than one ounce and was sentenced to serve three years in prison for three years on each count. *Tate v. State*, 912 So. 2d 919, 922 n.2 (Miss. 2005). Twelve years later, in 2003, Tate was convicted of possession with intent to deliver and delivery of marijuana. *Id*. at 922. He was sentenced as a habitual and enhanced offender and sentenced to serve two concurrent sentences of sixty years without the possibility of the sentences being reduced or suspended. *Id*. at 922-23. Because Tate is not eligible for early release, he will not be released from prison until he is ninety-nine years old. *Id*. Tate's conviction and subsequent appeals have several unusual features.

Tate was arrested on March 10, 2003 after giving a quantity of marijuana to government informant Gerald Warren. *Id*. at 922. Tate presented an entrapment defense, claiming that Warren left marijuana in Tate's shed without Tate's knowledge and Tate was

2

No. 09-60384

Custody," which entitled him to substantial privileges, including contact visitation with his family, ability to watch television, and recreation time with other prisoners. On February 22, 2008, Tate was validated as a Security Threat Group "Disruptive Core Leader" by prison officials, who charged that Tate was a leader of the prison gang the Simon City Royals. Consequently, Tate was reclassified as "D Custody" and relocated to Unit 32 at Parchman, with super-maximum security, solitary confinement conditions. In response to his reclassification, Tate brought this federal suit against numerous Mississippi Department of Corrections (MDOC) officials, asserting that they denied him access to courts, disciplined him as a form of retaliation, and reclassified him from B Custody to the super-maximum security D Custody without a hearing or

---

returning it to Warren–not selling it–at the time he was arrested. *Id*. at 924-25.

The credibility of Gerald Warren was called into question at the time of trial when his fourteen year old daughter, Brittany Warren, approached the defense with several numerous assertions against his credibility, including that he owned four to five pounds of marijuana, smoked marijuana, and that he had attempted to prostitute her for drugs. *Id*. at 928-29. She was prepared to testify that Gerald Warren answered in the affirmative when asked whether he set Tate up for $2,000 and a pound of marijuana given to him by the East Mississippi Task Force. *Id*. at 929. The trial court declined to admit Brittany's testimony for a number of reasons, including her mother's preference that she not testify and that Brittany had recently undergone drug treatment. *Id*. at 930.

After Tate was convicted, Gerald Warren recanted his trial testimony that Tate had delivered drugs to him and admitted that he had planted the drugs in Tate's shed. *Tate v. Parker*, 2010 WL 2606045, \*1 (S.D. Miss. June 22, 2010). Warren provided a recorded interview with Tate's counsel and signed two affidavits to this effect. *Id*. The district court found, for a multitude of reasons, that Warren had "virtually no credibility" and thus that the new evidence of Warren's recantation of trial testimony was insufficient to satisfy Tate's burden that, in light of the new evidence, it was more likely than not that no reasonable juror would find Tate guilty beyond a reasonable doubt. *Id*. at \*5-\*6.

Tate has filed several writs of habeas corpus, which have been dismissed. *See Tate v. Parker,* 2007 WL 892449 (S.D. Miss. Jan. 16, 2007); *Tate v. Parker*, 2010 WL 2606045 (S.D. Miss. June 22, 2010); *Tate v. Kelley*, 2011 WL 1103769 (S.D. Miss. March 23, 2011). On March 23, 2011, however, the district court certified for appeal the issue of whether Tate's sentence was grossly disproportionate to his crime. *Tate*, 2011 WL 1103769 at \*4.

3

written disclosure of the facts used to make the determination that he was a gang leader all in violation of his due process rights.

This case presents a somewhat confused record both procedurally and substantively. Although the initial pleadings seem to have been brought under the consent decree of *Presley v. Epps*, Civil Action No. 4:05CV148, the complaint also alleged, without citing the statute, certain 42 U.S.C. § 1983 constitutional claims relating to retaliation, access to courts, and denial of due process rights. The defendants have never raised the propriety of Tate's claim proceeding only under *Presley* as a defense or otherwise, but instead—apparently acknowledging that the complaint alleged a § 1983 claim—moved for summary judgment on the grounds that there was no issue of material fact and that Tate's classification was in compliance with the Mississippi Department of Corrections guidelines and not violative of Tate's constitutional rights.[2]

Tate's original complaint, filed on June 6, 2008, included allegations that prison officials were improperly interfering with his access to courts. His complaint read, in relevant part:

> MDOC officials have systematically interfered with my access to courts not only in my habeas petitions, but also in my attempts to file this complaint. They have intentionally tried to make me miss deadlines, confiscated stamps provided by my attorney, monitored confidential attorney client telephone calls, and censored confidential attorney-client mail, including this Complaint.

Tate's complaint was signed "Kirby Tate by, Sylvia Owen [Attorney for Plaintiff]" and was executed at Unit 32, Parchman, Mississippi.

The defendants moved for summary judgment but did not assert that Tate's affidavit did not constitute competent evidence. On February 25, 2009, the Magistrate Judge filed a Report and Recommendation in which he *sua sponte*

---

[2] The defendants' motion for summary judgment was not briefed and was unresponsive to several of the allegations in Tate's complaint.

raided the issue and ruled that Tate's complaint did not constitute admissible evidence because it was signed by Tate's counsel, rather than Tate. Accordingly, he found that there was no bona fide dispute of material facts. The magistrate judge also *sua sponte* addressed Tate's access to courts claim– not addressed by the defendants' motion for summary judgment–and found that Tate had not stated a claim. Further, the magistrate judge recommended, *sua sponte*, that Tate's complaint be dismissed with prejudice for failure to state a claim because an individual prisoner cannot state a claim based upon failure to comply with the provisions of *Presley*.

Tate's objections to the Report and Recommendation were due by March 11, 2009. Tate's counsel filed a motion for extended time, noting that prison officials refused to allow Tate to have his affidavit notarized. The court granted the motion, giving Tate until March 25 to submit his objections. On March 25, Tate filed a brief in support of objections and also a notice of technical difficulty regarding a scanner malfunction. On March 30, the district court issued an opinion overruling Tate's objections to the Report and Recommendation and approving and adopting the Report and Recommendation. On the same day, Tate filed a motion to reconsider, stating that "[d]ue to a scanner malfunction and prison legal mail it was not possible to file the [e]xhibits," which included over thirty pages, including Tate's affidavit and the affidavit of his counsel. On April 13, 2009, Tate filed an amended motion for reconsideration. On April 16, 2009, the district court issued an order denying Tate's motion to reopen, finding that Tate had failed to produce a legal or factual basis to alter the court's ruling. Tate timely appealed.

## II.

We begin by noting that the district court cited cases holding that prisoners have no liberty interest in their classification. To the extent that the summary judgment disposition of this case relied upon such cases, particularly

No. 09-60384

*Hernandez v. Valasquez*, 522 F.3d 556, 563-64 (5th Cir. 2008) and *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996), the district court erred in not considering *Wilkinson v. Austin*, 545 U.S. 209 (2005), which constitutes a crucial exception to the general rule that a prisoner has no liberty interest in his classification: that is, when the prisoner is incarcerated in super-maximum security conditions, as was Tate.

We review the district court's denial of a motion to reconsider for abuse of discretion. When deciding whether to grant a motion to reconsider, the trial court should consider the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party. *Garcia v. Women's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996). Additionally, the decision of the district court "will not be disturbed in the absence of a showing that it has worked an injustice." *Id.*

With this in mind, we evaluate the district court's denial of Tate's motion for reconsideration. Tate contends that he presented significant new and admissible evidence that the magistrate judge and district court refused to consider on grounds that his original complaint was not signed. Tate's original complaint noted "MDOC officials have systematically interfered with my access to courts . . . in my attempts to file this complaint. They have intentionally tried to make me miss deadlines . . . and censored confidential attorney-client mail, *including this Complaint*." Furthermore, the objections to the Report and Recommendation and the motion to reopen–addressing the basis of the magistrate judge's ruling, that is, that the complaint had not been signed–also alleged that Tate had not signed and submitted the necessary filings because the prison officials had prevented him from doing so. At oral argument, Tate's counsel further explained this claim by stating that prison guards refused to permit Tate to sign his pleading when she brought it to him on a visit.

6

No. 09-60384

Additionally, Tate's counsel filed motions for extensions of time on March 16 and March 30, 2009, claiming that prison officials were impeding Tate from signing the necessary documents.[3] Where important, probative evidence was not before the court because of the potentially illegal actions of defendants, an injustice has been suggested.

Tate's complaint was both important and probative to the appropriateness of granting the motion for summary judgment. The potential viability of Tate's claim to survive summary judgment is illustrated through the similar case of *Hogan v. Epps*, 2009 WL 4785860 (S.D. Miss., Dec. 8, 2009) (unpublished). In *Hogan*, the prisoner plaintiff alleged that, while housed at Parchman, he was identified as a Security Threat Group leader and transferred to super-maximum security conditions without due process. *Id*. at *2. The district court denied the state's summary judgment motion to dismiss Hogan's due process claim, after finding that:

> Defendants have supported their motion with no evidence as to the conditions or restrictions in the STG Units, the nature or frequency of review accorded inmates in the units, or the circumstances under which an inmate may be removed from STG segregation.

*Id*. at *3. As in *Hogan*, the defendants here have provided no information about the conditions and restrictions of STG units or the circumstances under which an inmate may be removed from STG segregation.[4] Further, the defendants

---

[3] Tate has consistently maintained–in his original complaint filed on June 6, 2008 until present–that MDOC officials interfered with his complaint.

[4] The evidence supporting the defendants' motion for summary judgment comprised of: (1) the affidavit of Ricky Scott, the CID Investigator who validated Tate; (2) computerized classification record forms from February 28, 2008 to July 30, 2008; and (3) the affidavit of Dr. Gloria Perry, discussing Tate's psychological condition. Noticeably absent from the defendants' summary judgment evidence was an affidavit attesting to the quality and content of Tate's possible classification hearing. The evidence submitted, like that presented in *Hogan*, fails to discuss the condition and restrictions of STG units, the form or content of the hearings alleged STG leaders receive before transfer, or circumstances under which an inmate may be removed from STG segregation.

7

No. 09-60384

submitted a three-page motion for summary judgment and neither party provided a supporting brief with the motion or response. In this light, the importance of Tate's complaint is clear: it addressed the issues in detail and thus provided significant probative value. We therefore conclude that the district court erred in adopting the magistrate judge's Report and Recommendation and abused its discretion in not further considering the motion to reopen. The judgment dismissing this complaint is, therefore, VACATED and the case REMANDED.

We suggest that the district court allow a *Spears* hearing to consider at least two matters. First, the district court should consider Tate's claim of the denial of access to courts, most particularly whether Tate was improperly prevented from signing his complaint and timely submitting his affidavit contesting the prison's policy. Second, the district court should consider whether the due process afforded to Tate during his reclassification into D custody, and subsequent review of the custody, satisfy the due process standards referenced in *Wilkinson v. Austin*.[5]

Tate also raised an additional claim relating to retaliation. The part of the judgment dismissing the retaliation claim is affirmed. The only viable claims remaining for the court to consider on remand are Tate's access to courts and due process claims. Accordingly, the judgment of the district court is AFFIRMED, in part, and VACATED, in part, and the case is REMANDED.

AFFIRMED in part; VACATED in part; and REMANDED.

---

[5] We are very sensitive to the fact that prison security issues are clearly involved. However, at oral argument, the defendants' counsel offered that they would be fully amenable to the court undertaking an *in camera* inspection of the evidence they have against Tate implicating him as a leader in the security threat group.

No. 09-60384

JERRY E. SMITH, Circuit Judge, dissenting:

Kirby Tate is a three-time convicted drug dealer who state prison officials believe is the leader of a prison gang known primarily for drug distribution.[1] They accordingly confined him in a super-maximum security prison unit, because he posed a security threat. Tate argues that the prison provided insufficient process in making that determination, but he did not proffer any evidence supporting his allegations before the district court granted summary judgment.

Giving Tate a mulligan, the majority (1) distorts or ignores crucial facts, (2) significantly muddles our caselaw concerning the standard for reviewing the denial of a motion to reconsider a judgment, (3) orders the district court to consider a claim that Tate did not preserve on appeal and that was not mentioned at oral argument, and (4) suggests that it is appropriate for a district court to review the substantive evidence supporting a state prison's classification determination in adjudicating a procedural due process claim. Moreover, the majority does so after having turned oral argument into a meandering, eighty-minute evidentiary hearing[2] involving unsworn, hearsay testimony by each party's counsel. I respectfully dissent and would affirm the summary judgment and the denial of the request to reopen.

---

[1] The majority seeks to buttress its opinion by dredging up facts to cast doubt on Tate's most recent conviction, even though those facts are utterly irrelevant to this appeal concerning *prison conditions*, and despite the fact that the conviction was upheld by the Mississippi Supreme Court and on habeas corpus review (only a challenge to the length of Tate's three-strikes-law sentence remains). The majority's cherry-picking of irrelevant but sympathetic facts merely gives the impression—not unwarranted—that its opinion is motivated more by misplaced sympathy for a criminal than by careful legal analysis.

[2] Even the most complex and important cases in this circuit usually receive, at most, forty minutes of oral argument. A very limited number, including en banc cases, receive an hour. This frivolous appeal was the exception and was given about double the customary time.

No. 09-60384

I.

Tate sued the Mississippi Department of Corrections ("MDOC") and many of its officials in June 2008, via a complaint signed only by his lawyer, which the majority erroneously and misleadingly refers to as "Tate's affidavit". R.23. Four months passed, and Tate did not present any evidence—not one iota—supporting his allegations. The discovery deadline expired in October 2008. Two months later, with a bare record, the MDOC moved for summary judgment on Tate's claims. R.188-89. Two months after that, with the record still bare, the magistrate judge issued a report in which he noted that Tate had not presented any proper summary judgment evidence because he had never signed his complaint and had not submitted anything else to support his allegations.[3]

Although Tate's attorney, Sylvia Owen, had signed the complaint and declared that it was true and correct under penalty of perjury, a verified complaint signed only by an attorney who, like Owen, lacks personal knowledge of a matter, is not competent summary judgment evidence, but only hearsay.[4] According

---

[3] *See* R.262 ("Tate's complaint asserts that Tate is not a member of any gang, much less a gang leader. But his complaint, while containing language that it is under oath, is signed not by Tate, but his counsel. . . . Therefore Tate has failed to provide admissible evidence . . . ."). The majority makes much of the fact that the magistrate judge addressed the evidentiary value of Tate's complaint *sua sponte*, but he had the authority to do so. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). Even assuming that Tate was not on notice about the fact that he had no competent summary judgment evidence to support his claims eight months after he filed his complaint, he had about a month after the magistrate judge's report to sign his complaint, but did not do so, and, as will be discussed, it was his own fault that the district court granted summary judgment.

[4] *See, e.g.,* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."); *Wells Fargo Home Mortg., Inc. v. Lindquist*, 592 F.3d 838, 845-46 (8th Cir. 2010) (holding that district court properly ignored attorney's affidavit because he did not assert personal knowledge of the transaction); *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) (holding attorney's affidavit that does nothing more than assemble properly authenticated evidence is still not admissible, because it is not based on personal knowledge); *United States v. Peterson*, 414 F.3d 825, 827

(continued...)

10

No. 09-60384

ly, the magistrate judge properly ignored it and recommended summary judg-
ment.

Owen stated at oral argument that the reason the complaint was not
signed by Tate was that prison officials had prevented her from passing the doc-
ument to him during visitation. She says she complained to the MDOC, "all the
way to the warden," to no avail. But, aside from Tate's affidavit filed *after* the
district court had granted summary judgment, R.373, there is no indication of
any of that in the record, even though the record contains dozens of pages of
communications between Owen and the MDOC that Owen submitted. *See*
R.55-93.

If Tate's and Owen's assertions were true, one would expect them to have
uttered those claims around the time the complaint was filed, not after the dis-
trict court had granted summary judgment over eight months later. Indeed,
even after the magistrate judge recommended summary judgment because Tate
had not signed his complaint and there was nothing else to support his allega-
tions, Tate and Owen *still* did not mention that the prison had obstructed Tate's
attempt to sign it.[5] We should not rely on Tate's and Owen's self-serving, *post*

---

[4] (...continued)
(7th Cir. 2005) ("The lawyer's affidavit, being hearsay, is no evidence at all.")*; Albright v.
FDIC*, 1994 U.S. App. LEXIS 6206, at \*16-\*17 (1st Cir. Apr. 1, 1994) (unpublished) (holding
that attorney's affidavit was not competent evidence of his clients' agreement or
communications with the defendants, because it was not based on personal knowledge); *Suit
v. Ellis*, 282 F.2d 145, 147 n.2 (5th Cir. 1960) ("The motion for new trial is of little assistance
to the petitioner except as a pleading to be considered by the Court, because the affidavit was
made by the attorney and not by the petitioner, and because it failed to contain any showing
that the attorney had any personal knowledge of the facts alleged."); 11 JAMES W. MOORE ET
AL., MOORE'S FEDERAL PRACTICE § 56.94[7][a], at 56-245 (3d ed. 2011) (stating that, in
opposing summary judgment, "an attorney's affidavit or declaration is subject to the same
personal knowledge requirement as any other affidavit or declaration . . . .").

[5] When Owen was asked at oral argument whether she mentioned to the magistrate
judge that prison officials had prevented her from passing the complaint to Tate at visitation,
she said, "I believe that's in my affidavit." But Owen's affidavit, dated September 5, 2008,
(continued...)

11

No. 09-60384

*hoc* explanations to force the district court to grant reconsideration. Yet the majority does precisely that.

Indeed, the majority goes further by making the unsupportable contention that Tate's complaint *itself* alleged that the MDOC had prevented him from signing it. That is physically and temporally impossible. According to Owen's claims at oral argument, she brought the complaint to the prison, where she sat down across from Tate separated by glass and could not hand the complaint to him because prison officials would not let her, so she signed it herself then and there. The complaint could not have related those events, because, if they occurred, it must have been after it was written.

What the complaint alleged was merely that prison officials had "censored confidential attorney-client *mail*, including this Complaint." R.38 (emphasis added). Moreover, the complaint explained the alleged "censor[ing]" of prison mail that the majority relies on, and it has nothing to do with preventing Tate from signing the complaint: When Tate attempted to mail the complaint to his attorney (unsigned, apparently), he "instructed the [prison] not to open it or make a copy. However, they obviously did so anyway because they returned a copy to [Tate]." R.38 n.4. Alleging that a prison read a high-security inmate's mail before mailing it and gave the inmate a copy does not equate to alleging that the prison obstructed a client's attempt to sign it.[6] Thus, despite the majority's claims, the record does not show that the MDOC prevented Tate from signing his complaint before the magistrate judge excluded it from evidence.

---

[5] (...continued)
does not so allege. *See* R.366-71. Moreover, in what appears to be a pattern, Owen's affidavit is not competent evidence, because she never signed it. R.11, 371.

[6] According to the MDOC, it needed to monitor Tate's communications with Owen because they were in a physical relationship together, so she posed a security risk. There is no evidence in the record to support that claim, but the district court may wish to inquire into the matter on remand.

12

No. 09-60384

What the record does show––and the majority omits––is that Owen mailed an affidavit to Tate on February 26, 2009, a day *after* the magistrate judge issued his report recommending summary judgment.[7]  In other words, Owen was not diligently attempting to get Tate's complaint signed for months; it was not until the deadline that Owen realized for the first time that her client needed to sign something.  That is not at all that surprising, given that she is an estate planning attorney who says she is representing Tate as a family friend, not a litigator with trial expertise.  Owen's inexperience, not prison interference, is the reason Tate's complaint had not been signed over the course of eight months.

After Owen sent Tate the affidavit in February 2009, she was unsuccessful in obtaining a signed copy from him, so she sought a ten-day extension, allegedly because "prison officials refused to allow [Tate] to have it notarized," and "[Tate's] mental state after being locked down for over a year appears to be hindering his ability to follow instructions and assist counsel in the production of this case."  R.266.[8]  That Owen asked for only a ten-day extension casts further doubt on her allegations of prison malfeasance, because if the MDOC had really been consistently denying her client access to her documents for almost a year by that point, one would think she would have asked for more than an extra ten days.  Regardless, the district court granted Owen precisely the ten-day extension she requested.  R.269.

When the deadline expired, Owen filed objections to the magistrate judge's report without any accompanying evidence.  In her brief, she stated that "Tate

---

[7] *See* R.266 ("Magistrate Jerry Davis filed his Report and Recommendations in the above referenced action on February 25, 2009 . . . .  Plaintiff's counsel mailed an affidavit to Plaintiff on February 26, 2009 . . . .").

[8] Given that Tate's affidavit did not need to be notarized, only signed and declared true and correct under penalty of perjury, *see DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530-31 (5th Cir. 2005) (citing 28 U.S.C. § 1746 (2006)), even if Owen's allegations were true, one can question whether the prison materially hindered her from obtaining Tate's affidavit.

13

will miss the ten day deadline to file his affidavit" because "he was not allowed to have [it] notarized." R.296. She did not explain why she had failed to submit any other evidence. The next day, however, she filed a notice of technical difficulty explaining that she could not submit Tate's exhibits because of a "scanner malfunction," but that "[t]he problem will be corrected promptly." R.11, 328. She did not request an extension of her deadline to submit evidence. At that point, it would have appeared to the district court that Owen had every document she required but only needed a few hours or an extra day to submit them.

Five days passed, however, with silence from Tate and his counsel. The district court, its deadline now having been flouted, pulled the trigger and granted summary judgment to the MDOC. R.331-32. Given that Owen did not request an extension of her already-extended deadline, and that her reason for the delay was a "scanner malfunction" that continued for five days, it was not unreasonable for the district court to do so.

Immediately after the court entered summary judgment, on March 30, 2009, Owen filed a Federal Rule of Civil Procedure 59(e) motion to reopen the case on the ground that, "[d]ue to a scanner malfunction and prison legal mail[,] it was not possible to file" her exhibits on time. R.333-34. Along with that motion, she submitted a number of documents, including affidavits from Tate's brother and wife, signed February 25 and 28, respectively, and various public documents relating to the procedures the MDOC had provided Tate. R.335-59. Any of those documents could have been filed months earlier and have nothing to do with the prison's alleged interference with Owen's communications with her client, but the majority holds that the district court must consider them anyway.

Along with her motion to reopen, Owen filed a motion for additional time to obtain Tate's affidavit on the ground that the prison had "interfer[ed] with legal mail when [Tate] attempted to make the necessary revisions to his Affidavit."

No. 09-60384

R.360. She also submitted an untimely affidavit of her own, dated September 2008, which the court rejected because she had not signed it. R.11, 366-71. Finally, in April 2009, before the court could rule on the motion for additional time, Owen submitted another rule 59(e) motion to reopen, along with various documents, including another copy of Tate's complaint and an affidavit, both of which Tate finally signed and declared true and correct under penalty of perjury. R.372-415. The district court then declined to reopen, without considering the additional materials, because the "same arguments" were before the magistrate judge when he issued his report and recommendation. R.416.

## II.

Where, as here, the district court did "not expressly or impliedly refer to the materials [submitted with a rule 59(e) motion] in its ruling," we review its denial of the motion for abuse of discretion. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). The majority cites *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 814 (5th Cir. 1994), for the proposition that a decision not to reopen "will not be disturbed in the absence of a showing that it has worked an injustice in the cause." The majority concludes, however, that "because an injustice has been *suggested*" (emphasis added), not *shown*, the district court abused its discretion. Not only does the majority ignore the very standard it cites but, by its reasoning, no judgment would ever be final.

We do not have a freewheeling "possible injustice" standard for reviewing denials of motions to reopen, and it will cause chaos in the district courts if we adopt one. To the contrary, because granting rule 59(e) relief to reopen a final judgment is an "extraordinary remedy" that should be "used sparingly," *id.* at 479 (citations omitted), we reverse a denial of a rule 59(e) motion only to correct *manifest* errors of law or fact or because of newly discovered evidence. *Id.* (citing

15

No. 09-60384

*Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).[9]  *Those* are the specific kinds of "injustice" that we have held are grounds for reversing a denial of a rule 59(e) motion.  Such a motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.*

An unexcused failure to present evidence available at the time of summary judgment is a valid reason for denying a motion to reopen.  *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).  For example, in *Templet* the plaintiffs did not provide expert evidence to the district court before summary judgment because, by the time they obtained the evidence, the deadline for providing such evidence had expired.  *Id.* at 478.  The plaintiffs argued, in their motion for reconsideration, that they could not have produced the evidence without violating the scheduling order, but the district court denied the motion to reconsider because plaintiffs could have asked for a continuance or a rescheduling of deadlines before summary judgment.  *Id.* at 479.  We held that the court did not abuse its discretion.  *Id.* at 479-80.

The same is true here.  Tate does not and cannot allege that the district court manifestly misconstrued the law or facts when it granted summary judgment, because the record was essentially bare.  There were thus no facts to misconstrue, and without facts, there was no law that could help Tate.[10]  Moreover,

---

[9] We may also do so when there has been an intervening change in the controlling law, *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567-68 (5th Cir. 2003), but that is not the situation here.

[10]  Irrespective of whether Tate both possesses a liberty interest and was denied due process under *Wilkinson v. Austin*, 545 U.S. 209 (2005)—issues that neither the majority nor I address—Tate did not show—before the district court granted summary judgment—any competent evidence of either a liberty interest or a due process violation, let alone sufficient evidence to satisfy his burden to defeat summary judgment. *See Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.").

No. 09-60384

Tate was obviously aware of the possibility that his testimony could be used as evidence, so it was not newly discovered.[11]

It is true that Tate alleged that the MDOC prevented him from getting the affidavit notarized, but if he did not believe he could submit evidence on time, it was his responsibility to ask for an extension *before* summary judgment, as he had once already done.[12]  Instead, he said, through counsel, that he would submit all his exhibits as soon as a scanner malfunction was promptly corrected. The district court patiently waited for five days, and when still nothing was forthcoming, it entered a final judgment.  Because it was Tate's own fault that the court decided the case, the court was entitled to deny his rule 59(e) motion for reconsideration.

In addition, we have no information about the extent, nature, or impropriety of the MDOC's alleged interference.  We have nothing more than an unelaborated assertion of "interference" with legal mail causing "delay."  R.373.  The majority thus reopens the case, as it concedes, based only on the *possibility* that injustice might have occurred.  That will open the door to any number of plaintiffs' seeking to reopen cases based on unsupported allegations of injustice when the case does not go their way, and this will significantly increase costs on both the court system and parties.  It cannot be squared with the notion that reconsideration of a judgment is an "extraordinary remedy that should be used spar-

---

[11] *See Templet*, 367 F.3d at 479 (holding evidence was not newly discovered because "the underlying facts were well within the [party's] knowledge prior to the district court's entry of judgment").

[12] *See Fanning v. Metro. Transit Auth.*, 141 F. App'x 311, 314 (5th Cir. 2005) ("[O]ur court has foreclosed a party's contention on appeal that it had inadequate time to marshal evidence to defend against summary judgment when the party did not seek Rule 56(f) [now rule 56(d)] relief before the summary judgment ruling. A Rule 56[(d)] motion [for continuance], not [a rule 59(e) motion] for reconsideration, is the proper remedy for a party claiming summary judgment is inappropriate because of inadequate discovery." (citing *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996))).

ingly." *Templet*, 367 F.3d at 479 (citations omitted).

Moreover, the majority does not consider that Tate's claim of interference is questionable given that, as discussed in part I, Tate and Owen now say that the prison interfered with Tate's attempts to sign his original complaint, yet they did not see fit to mention that salient fact over the course of eight months until after summary judgment had been granted. That is not to say Tate and Owen necessarily lied, but only to reason that the district court did not abuse its discretion by not granting the "extraordinary remedy" of reopening the case

## III.

Just as troubling as the majority's legal analysis, however, is that it reaches its conclusion by seizing on the explanations that Owen gave at our eighty-minute "evidentiary hearing," while ignoring the MDOC's attorney's claims that Owen's *post hoc* allegations were false. Although the majority pays lip service to the abuse-of-discretion standard for motions to reopen, it essentially reviews the district court's decision *de novo* by putting its own credibility determinations ahead of the district court's conclusions. There is no law that I am aware of that gives us the authority to decide that the district court got it wrong and to reach that conclusion by turning oral argument into a fact-gathering excursion, then basing our ruling on our own assessment of each party's lawyer's credibility at argument. If the practice of retrying cases at oral argument becomes widespread, we will have mostly done away with the notion of deference to the district courts, and the courts will incur considerable expense by having to construct witness stands in appellate courtrooms.

## IV.

The majority also errs by inexplicably resurrecting a claim that Tate had waived. The majority instructs the district court to review Tate's access-to-

18

No. 09-60384

courts claim even though that claim was given only a few lines in the "statement of the case" section of Tate's opening brief, without citation to any authority. Failing to cite any authority in even a one-page argument constitutes waiver. *L & A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994). Indeed, we did not discuss the issue at oral argument and did not ask the parties to address it in their supplemental briefing.  The notion that the MDOC might be prejudiced by the majority's eleventh-hour action apparently does not concern the majority in any way.

V.

The majority drops a footnote, near the end of its opinion, suggesting that the district court undertake an *in camera* review of the MDOC's evidence against Tate, because the MDOC stated that it was "fully amenable" to doing so.  That creates the impression that this case turns on whether Tate was properly classi-fied as a gang leader.  It does not.  The majority appears to have forgotten that Tate's claim is one of *procedural* due process—*i.e.*, whether the MDOC has fol-lowed constitutionally adequate procedures in classifying Tate—*not* a question of whether the MDOC had adequate substantive ground to place him in Unit 32. No law exists for the proposition that federal courts may sit as tribunals in re-view of state prisons' substantive decisions concerning who should or should not be placed in super-maximum-security custody.  Whether the MDOC made the right decision in moving Tate into Unit 32 is entirely irrelevant to whether his due process rights were violated.

VI.

The majority opinion does have two virtues.  The first is that, as an unpub-lished decision, it is non-precedential, 5TH CIR. R. 47.5, so future panels are en-titled to ignore it.  The second is that the majority does not grant or deny sum-

mary judgment but remands to the district court to consider any issues it deems appropriate.

The district court should inquire whether Tate's claim is moot. The MDOC appears to have closed down Unit 32 at Parchman and transferred Tate to a non-supermax prison while this appeal was pending. Mississippi seemingly does not have any other super-maximum security units. Voluntary cessation of a challenged practice moots a case if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[13]

I respectfully dissent.

---

[13] *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of the Earth,* 528 U.S. at 189).