E. GRADY JOLLY, Circuit Judge: *
Mississippi prisoner Kirby Tate brought suit against prison officials for placing him in super-maximum security, solitary confinement for two years without satisfying due process requirements. Tate appeals the district court’s grant of the defendants’ summary judgment motion and the denial of his motion to reopen. We AFFIRM in part and VACATE in part the district court’s grant of summary judgment, and VACATE the denial of the motion to reopen. We REMAND the case to the district court for further proceedings.
I.
Kirby Tate was sentenced to sixty years of imprisonment without the possibility for parole after being convicted of intent to distribute one half pound of marijuana.[1] *722 Until February 22, 2008, Tate’s prison classification was “B Custody,” which entitled him to substantial privileges, including contact visitation with his family, ability to watch television, and recreation time with other prisoners. On February 22, 2008, Tate was validated as a Security Threat Group “Disruptive Core Leader” by prison officials, who charged that Tate was a leader of the prison gang the Simon City Royals. Consequently, Tate was reclassified as “D Custody” and relocated to Unit 32 at Parchman, with super-maximum security, solitary confinement conditions. In response to his reclassification, Tate brought this federal suit against numerous Mississippi Department of Corrections (MDOC) officials, asserting that they denied him access to courts, disciplined him as a form of retaliation, and reclassified him from B Custody to the super-maximum security D Custody without a hearing or written disclosure of the facts used to make the determination that he was a gang leader all in violation of his due process rights.
This case presents a somewhat confused record both procedurally and substantively. Although the initial pleadings seem to have been brought under the consent decree of Presley v. Epps, Civil Action No. 4:05CV148, the complaint also alleged, without citing the statute, certain 42 U.S.C. § 1983 constitutional claims relating to retaliation, access to courts, and denial of due process rights. The defendants have never raised the propriety of Tate’s claim proceeding only under Presley as a defense or otherwise, but instead— apparently acknowledging that the complaint alleged a § 1983 claim — moved for summary judgment on the grounds that there was no issue of material fact and that Tate’s classification was in compliance with the Mississippi Department of Cor *723 rections guidelines and not violative of Tate’s constitutional rights.[2]
Tate’s original complaint, filed on June 6, 2008, included allegations that prison officials were improperly interfering with his access to courts. His complaint read, in relevant part:
MDOC officials have systematically interfered with my access to courts not only in my habeas petitions, but also in my attempts to file this complaint. They have intentionally tried to make me miss deadlines, confiscated stamps provided by my attorney, monitored confidential attorney client telephone calls, and censored confidential attorney-client mail, including this Complaint.
Tate’s complaint was signed “Kirby Tate by, Sylvia Owen [Attorney for Plaintiff]” and was executed at Unit 32, Parchman, Mississippi.
The defendants moved for summary judgment but did not assert that Tate’s affidavit did not constitute competent evidence. On February 25, 2009, the Magistrate Judge filed a Report and Recommendation in which he sua sponte raided the issue and ruled that Tate’s complaint did not constitute admissible evidence because it was signed by Tate’s counsel, rather than Tate. Accordingly, he found that there was no bona fide dispute of material facts. The magistrate judge also sua sponte addressed Tate’s access to courts claim — not addressed by the defendants’ motion for summary judgment — and found that Tate had not stated a claim. Further, the magistrate judge recommended, sua sponte, that Tate’s complaint be dismissed with prejudice for failure to state a claim because an individual prisoner cannot state a claim based upon failure to comply with the provisions of Presley.
Tate’s objections to the Report and Recommendation were due by March 11, 2009. Tate’s counsel filed a motion for extended time, noting that prison officials refused to allow Tate to have his affidavit notarized. The court granted the motion, giving Tate until March 25 to submit his objections. On March 25, Tate filed a brief in support of objections and also a notice of technical difficulty regarding a scanner malfunction. On March 30, the district court issued an opinion overruling Tate’s objections to the Report and Recommendation and approving and adopting the Report and Recommendation. On the same day, Tate filed a motion to reconsider, stating that “[d]ue to a scanner malfunction and prison legal mail it was not possible to file the [exhibits,” which included over thirty pages, including Tate’s affidavit and the affidavit of his counsel. On April 13, 2009, Tate filed an amended motion for reconsideration. On April 16, 2009, the district court issued an order denying Tate’s motion to reopen, finding that Tate had failed to produce a legal or factual basis to alter the court’s ruling. Tate timely appealed.
II.
We begin by noting that the district court cited cases holding that prisoners have no liberty interest in their classification. To the extent that the summary judgment disposition of this case relied upon such cases, particularly Hernandez v. Velasquez, 522 F.3d 556, 563-64 (5th Cir.2008) and Pichardo v. Kinker, 73 F.3d 612, 612-13 (5th Cir.1996), the district court erred in not considering Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), which constitutes a crucial exception to the general rule that a prisoner has no liberty interest in his classification: that is, when the prisoner is *724 incarcerated in super-maximum security conditions, as was Tate.
We review the district court’s denial of a motion to reconsider for abuse of discretion. When deciding whether to grant a motion to reconsider, the trial court should consider the importance and probative value of the evidence, the reason for the moving party’s failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party. Garcia v. Woman’s Hosp. of Tex., 97 F.3d 810, 814 (5th Cir.1996). Additionally, the decision of the district court “will not be disturbed in the absence of a showing that it has worked an injustice.” Id.
With this in mind, we evaluate the district court’s denial of Tate’s motion for reconsideration. Tate contends that he presented significant new and admissible evidence that the magistrate judge and district court refused to consider on grounds that his original complaint was not signed. Tate’s original complaint noted “MDOC officials have systematically interfered with my access to courts ... in my attempts to file this complaint. They have intentionally tried to make me miss deadlines ... and censored confidential attorney-client mail, including this Complaint.” Furthermore, the objections to the Report and Recommendation and the motion to reopen — addressing the basis of the magistrate judge’s ruling, that is, that the complaint had not been signed — also alleged that Tate had not signed and submitted the necessary filings because the prison officials had prevented him from doing so. At oral argument, Tate’s counsel further explained this claim by stating that prison guards refused to permit Tate to sign his pleading when she brought it to him on a visit. Additionally, Tate’s counsel filed motions for extensions of time on March 16 and March 30, 2009, claiming that prison officials were impeding Tate from signing the necessary documents.[3] Where important, probative evidence was not before the court because of the potentially illegal actions of defendants, an injustice has been suggested.
Tate’s complaint was both important and probative to the appropriateness of granting the motion for summary judgment. The potential viability of Tate’s claim to survive summary judgment is illustrated through the similar case of Hogan v. Epps, 2009 WL 4785860 (S.D.Miss., Dec.8, 2009) (unpublished). In Hogan, the prisoner plaintiff alleged that, while housed at Parchman, he was identified as a Security Threat Group leader and transferred to super-maximum security conditions without due process. Id. at *2. The district court denied the state’s summary judgment motion to dismiss Hogan’s due process claim, after finding that:
Defendants have supported their motion with no evidence as to the conditions or restrictions in the STG Units, the nature or frequency of review accorded inmates in the units, or the circumstances under which an inmate may be removed from STG segregation.
Id. at *3. As in Hogan, the defendants here have provided no information about the conditions and restrictions of STG units or the circumstances under which an inmate may be removed from STG segregation.[4] Further, the defendants submitted a three-page motion for summary *725 judgment and neither party provided a supporting brief with the motion or response. In this light, the importance of Tate’s complaint is clear: it addressed the issues in detail and thus provided significant probative value. We therefore conclude that the district court erred in adopting the magistrate judge’s Report and Recommendation and abused its discretion in not further considering the motion to reopen. The judgment dismissing this complaint is, therefore, VACATED and the case REMANDED.
We suggest that the district court allow a Spears hearing to consider at least two matters. First, the district court should consider Tate’s claim of the denial of access to courts, most particularly whether Tate was improperly prevented from signing his complaint and timely submitting his affidavit contesting the prison’s policy. Second, the district court should consider whether the due process afforded to Tate during his reclassification into D custody, and subsequent review of the custody, satisfy the due process standards referenced in Wilkinson v. Austin,[5]
Tate also raised an additional claim relating to retaliation. The part of the judgment dismissing the retaliation claim is affirmed. The only viable claims remaining for the court to consider on remand are Tate’s access to courts and due process claims. Accordingly, the judgment of the district court is AFFIRMED, in part, and VACATED, in part, and the case is REMANDED.
AFFIRMED in part; VACATED in part; and REMANDED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. On January 28, 1991, Tate pleaded guilty to two counts of sale of marijuana less than one ounce and was sentenced to serve three years in prison for three years on each count. Tate v. State, 912 So.2d 919, 922 n. 2 (Miss.2005). Twelve years later, in 2003, Tate was convicted of possession with intent to deliver and delivery of marijuana. Id. at 922. He was sentenced as a habitual and enhanced offender and sentenced to serve two concurrent sentences of sixty years without the possibility of the sentences being reduced or suspended. Id. at 922-23. Because Tate is not eligible for early release, he will not be released from prison until he is ninety-nine years old. Id. *722 Tate's conviction and subsequent appeals have several unusual features.
Tate was arrested on March 10, 2003 after giving a quantity of marijuana to government informant Gerald Warren. Id. at 922. Tate presented an entrapment defense, claiming that Warren left marijuana in Tate's shed without Tate’s knowledge and Tate was returning it to Warren-not selling it-at the time he was arrested. Id. at 924-25.
The credibility of Gerald Warren was called into question at the time of trial when his fourteen year old daughter, Brittany Warren, approached the defense with several numerous assertions against his credibility, including that he owned four to five pounds of marijuana, smoked marijuana, and that he had attempted to prostitute her for drugs. Id. at 928-29. She was prepared to testify that Gerald Warren answered in the affirmative when asked whether he set Tate up for $2,000 and a pound of marijuana given to him by the East Mississippi Task Force. Id. at 929. The trial court declined to admit Brittany’s testimony for a number of reasons, including her mother’s preference that she not testify and that Brittany had recently undergone drug treatment. Id. at 930.
After Tate was convicted, Gerald Warren recanted his trial testimony that Tate had delivered drugs to him and admitted that he had planted the drugs in Tate’s shed. Tate v. Parker, 2010 WL 2606045, *1 (S.D.Miss. June 22, 2010). Warren provided a recorded interview with Tate’s counsel and signed two affidavits to this effect. Id. The district court found, for a multitude of reasons, that Warren had "virtually no credibility” and thus that the new evidence of Warren's recantation of trial testimony was insufficient to satisfy Tate’s burden that, in light of the new evidence, it was more likely than not that no reasonable juror would find Tate guilty beyond a reasonable doubt. Id. at *5-*6.
Tate has filed several writs of habeas corpus, which have been dismissed. See Tate v. Parker, 2007 WL 892449 (S.D.Miss. Jan.16, 2007); Tate v. Parker, 2010 WL 2606045 (S.D.Miss. June 22, 2010); Tate v. Kelly, 2011 WL 1103769 (S.D.Miss. March 23, 2011). On March 23, 2011, however, the district court certified for appeal the issue of whether Tate’s sentence was grossly disproportionate to his crime. Tate, 2011 WL 1103769 at *4.

. The defendants’ motion for summary judgment was not briefed and was unresponsive to several of the allegations in Tate’s complaint.

. Tate has consistently maintained-in his original complaint filed on June 6, 2008 until present-that MDOC officials interfered with his complaint.

. The evidence supporting the defendants’ motion for summary judgment comprised of: (1) the affidavit of Ricky Scott, the CID Investigator who validated Tate; (2) computerized classification record forms from February 28, 2008 to July 30, 2008; and (3) the affidavit of Dr. Gloria Perry, discussing Tate’s psychological condition. Noticeably absent from the defendants’ summary judgment evidence was an affidavit attesting to the quality and content of Tate’s possible classification hearing. The evidence submitted, like that presented in Hogan, fails to discuss the condition and re *725 strictions of STG units, the form or content of the hearings alleged STG leaders receive before transfer, or circumstances under which an inmate may be removed from STG segregation.

. We are very sensitive to the fact that prison security issues are clearly involved. However, at oral argument, the defendants' counsel offered that they would be fully amenable to the court undertaking an in camera inspection of the evidence they have against Tate implicating him as a leader in the security threat group.