IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-31043

CHIEFTAIN INTERNATIONAL (U.S.), INC.; HUNT CHIEFTAIN
DEVELOPMENT, L.P.; HUNT OIL CO.,

Plaintiffs–Appellees,

v.

SOUTHEAST OFFSHORE, INC.,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, GARZA, and OWEN Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Appellant Southeast Offshore, Inc. (Southeast) appeals the district court's grant of partial summary judgment to Chieftain International (U.S.), Inc., Hunt Chieftain Development, L.P., and Hunt Oil Company (collectively, Hunt) and the court's holding that Southeast remains solidarily liable to Hunt for the operating expenses of Southeast's assignee, South Pass Properties, Inc. (South Pass Properties). Southeast also appeals the district court's denial of its motion to reopen the summary judgment record. We affirm.

I

Southeast became an owner of fractional working interests in two federal oil and gas leases covering submerged lands in the Gulf of Mexico (the Leases). Joint operations on the Leases among the co-owners were governed by two separate but substantially identical joint operating agreements (JOAs), one covering the north half of South Pass Block 37 (North JOA) and the second covering the south half of South Pass Block 37 (South JOA).

When Southeast acquired its fractional interests in the Leases, it became a party to and assumed the rights and obligations under the JOAs. Hunt also owned fractional working interests in the Leases and, in its capacity as operator, advanced 100% of the costs of operations. Hunt periodically billed the other co-owners for their proportionate share of such costs in accordance with the JOAs.

After several years, Southeast stopped paying Hunt's invoices for its share of joint account expenses. Southeast subsequently entered into a written assignment with a newly formed, wholly owned subsidiary, South Pass Properties, and at that time Southeast owed Hunt approximately $450,000. Pursuant to the assignment, South Pass Properties assumed all of Southeast's rights and obligations under the Leases and JOAs. However, South Pass Properties did not pay any bills associated with the joint operations on the leases either before or after the assignment.

Approximately six months after the assignment, Hunt proposed and the co-owners unanimously approved abandonment of the leases. Hunt undertook steps to abandon the Leases in compliance with applicable federal regulations, including paying the associated costs. South Pass Properties failed to pay cash calls to cover its share of the associated costs.

Hunt filed suit alleging breach of contract. Hunt sued both Southeast and South Pass Properties, asserting that Southeast's assignment did not release

Southeast from its obligations under the applicable JOAs. The district court agreed with Hunt, denying Southeast's summary judgment motion and granting a partial summary judgment in Hunt's favor. The court ruled that the language in the JOAs was not sufficiently clear to effect a release of Southeast and, therefore, Southeast was solidarily liable.

Southeast and South Pass Properties then instituted bankruptcy proceedings under Chapter 7.[1] The automatic stay was lifted as to Southeast and the district court entered a final judgment holding Southeast solidarily liable to Hunt for $5,841,950.18 plus interest, costs, and attorney's fees. The district court also denied Southeast's motion to reopen the summary judgment record. Southeast has appealed.

II

This court reviews a grant or denial of summary judgment de novo, applying the same standard as the district court.[2] Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] "Any reasonable inferences are to be drawn in favor of the non-moving party."[4]

Louisiana law provides that an assignee and assignor remain solidarily liable with regard to the assignor's obligations to a third party unless the third party releases the assignor. Louisiana Civil Code article 1821 states:

> An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the

---

[1] See 11 U.S.C. § 301.

[2] Robinson v. Orient Marine Co. Ltd., 505 F.3d 364, 365 (5th Cir. 2007) (citing Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003)).

[3] FED. R. CIV. P. 56(c).

[4] Robinson, 505 F.3d at 366 (citing Gowesky, 321 F.3d at 507).

obligee against the third person, the agreement must be made in writing.

The obligee's consent to the agreement does not effect a release of the obligor.

The unreleased obligor remains solidarily bound with the third person.[5]

Accordingly, Southeast's assignment to South Pass Properties, by itself, did not release Southeast from its obligations to Hunt.[6] Hunt must have affirmatively released Southeast. The record is devoid of any affirmative release from Hunt.

Southeast argues that the JOAs expressly provide that there will be no joint or several liability between Southeast and South Pass Properties. Southeast cites a provision in the South JOA entitled "Relationship of the Parties," which states, in relevant part:

> The parties expressly agree that no party hereto shall be responsible for the obligations of any other party, each party being severally responsible only for its obligations arising hereunder and liable only for its allocated share of the costs and expenses incurred hereunder. It is not the purpose or intention of this Agreement to create, and this Agreement should never be construed as creating, a relationship whereby any of the parties shall be held liable for acts, either of omission or commission, of any other party hereto.

However, contrary to Southeast's reading, this provision does not relieve a co-owner from continuing obligations if it assigns its interest in the lease to a third party.

Southeast also argues that the JOAs provide that an assignor is not solidarily liable after an assignment. Southeast cites Article VIII of the South

---

[5]  LA. CIV. CODE ANN. art. 1821.

[6]  See Bradford v. Onshore Pipeline Constr. Co., Inc., 03-37,421 (La. App. 2 Cir. 8/22/03); 853 So. 2d 756, 760 n.10 (noting that "[Defendant] is not relieved from its obligations under the gas purchase contract with Plaintiffs just because it made an assignment to [a third party]").

JOA concerning the assignment of rights in a platform proposed to be abandoned by less than all of the co-owners. Under that provision, a party who assigns its interest to another co-owner "will have no further rights, obligations or liabilities thereafter accruing with respect to such platform." Similarly, Article IX, involving the abandonment of a well by less than all the parties to the JOA, provides:

> [T]he party or parties desiring that the well be retained . . . shall pay to the party or parties desiring abandonment the proportionate share of such latter party or parties' interest . . . . Upon receipt or the making of such payment, the party or parties desiring to abandon the well shall . . . assign . . . to the party or parties desiring to retain the well all right, title and interest of the assigning party or parties in and to the well . . . . After making such assignment, the assigning party or parties shall be under no further obligation (except for obligations already accrued) with respect to such well or such production therefrom.

These provisions do not pertain to an assignment of a co-owner's working interest to a third party. Further, since the assignment in this case did not occur due to an abandonment of a platform or well, none of these provisions are applicable.

No other provisions in the JOAs release Southeast from the obligations to pay its proportionate share of its operating costs under the JOAs. Nor has Southeast shown, or sufficiently alleged, a specific defense arising from the nature of the obligation.[7] Because Southeast has not shown that Hunt released it, Southeast remains solidarily liable to Hunt.

### III

Southeast contends that the district court erred by refusing to reopen the summary judgment record to consider the deposition of Bruce Cope, a Hunt corporate representative. We review a district court's ruling on a party's motion

---

[7] See LA. CIV. CODE ANN. art. 1801 ("[a] solidary obligor may raise against the obligee defenses that arise from the nature of the obligation").

to reopen the record for abuse of discretion.[8] "The court's decision 'will not be disturbed in the absence of a showing that it has worked an injustice in the cause.'"[9] In deciding whether to allow a reopening, we have directed trial courts to weigh "the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party."[10]

During his deposition, Cope was asked about one of the billing records Hunt had produced earlier in the case. Under the column entitled "Bill," Cope testified that "Y" means that a party is billable and "N" indicates that a party is no longer billable. In the billing record, Cope affirmed that Southeast had an "N" in the "Bill" column and South Pass Properties had a "Y" in the "Bill" column. Southeast claims that the Cope testimony provided new evidence that Hunt released Southeast from any liability for expenses incurred after the effective date of the assignment to South Pass Properties. But, in its summary judgment motion, Southeast acknowledged that Hunt changed its billing records to make South Pass Properties the billable party. The Cope deposition testimony merely confirmed evidence that was already available. More importantly, changing the notation for the billable party in internal company records does not effectuate a release of an interest owner that has assigned its rights and obligations to a third party.[11] The district court correctly determined

---

[8] See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971) ("[A] motion to reopen to submit additional proof is addressed to [the trial judge's] sound discretion."); Garcia v. Woman's Hosp. of Tex., 97 F.3d 810, 814 (5th Cir. 1996) ("We review for abuse of discretion a district court's ruling on a party's motion to reopen its case for the presentation of additional evidence.").

[9] Garcia, 97 F.3d at 814 (quoting Gas Ridge, Inc. v. Suburban Agric. Props., Inc., 150 F.2d 363, 366 (5th Cir. 1945)).

[10] Id.

[11] See LA. CIV. CODE ANN. art. 1821 ("The obligee's consent to the agreement does not effect a release of the obligor.").

that the Cope deposition testimony had a low level of importance and probative value and that introduction of the Cope deposition would not have changed the outcome of this case.

Because the district court had ample support for its denial of Southeast's motion to reopen the record, we conclude that it did not abuse its discretion.

\*       \*       \*

For the foregoing reasons, we AFFIRM the judgment of the district court.