# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-60270

---

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2024

Lyle W. Cayce
Clerk

LION ELASTOMERS, L.L.C.,

*Petitioner/Cross-Respondent*,

*versus*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE
WORKERS INTERNATIONAL UNION, LOCAL 228

*Intervenor*.

---

Petition for Review of an Order of the from the National Labor Relations
Board
Agency Nos. 16-CA-190681,
16-CA-203509, 16-CA-225153

---

Before JONES, CLEMENT, and WILSON, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:

The National Labor Relations Board was historically afforded
deference when its interpretations of the National Labor Relations Act were

No. 23-60270

subject to judicial review.[1] But what about when the NLRB[2] tells us that it plans to use one interpretation on remand and then uses another? In *Lion Elastomers v. NLRB I*, the NLRB sought a remand to apply a new interpretation of the NLRA that was announced in *General Motors*—an agency adjudication issued after the dispute underlying this proceeding was initially adjudicated but before briefing on appeal. But that's not what the Board did on remand. Instead, the Board used the remand proceeding as a vehicle to overrule *General Motors*. Because the NLRB not only exceeded the scope of the remand but also violated Lion Elastomers's due-process rights during the remand proceeding, we VACATE the remand determination and REMAND once more.

## I.

Lion Elastomers manufactures synthetic rubber in Port Neches, Texas. Around eighty-five to ninety of its approximately 200 employees are part of a bargaining unit represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, Local 228.

## A.

Section 7 of the National Labor Relations Act (NLRA) provides employees "the right to self-organization, to form, join, or assist labor

---

[1] After this case was argued, the Supreme Court issued *Loper Bright Enterprises v. Raimondo*, No. 22-1219, 2024 WL 3208360, at *1 (U.S. June 28, 2024), which formally overturned *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Although we discuss how an agency has understood a question of statutory interpretation, we resolve this case on other grounds and need not reach the validity of the agency's interpretation. *See Loper Bright*, 2024 WL 3208360, at *21.

[2] We use "Board" when referring to the National Labor Relations Board in its capacity as a quasi-judicial body and "NLRB" when referring to the National Labor Relations Board as an agency and party to this proceeding.

organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining"—so called "protected activities." 29 U.S.C. § 157. Section 8 of the NLRA, among other things, bars employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of" protected activities. 29 U.S.C. § 158(a). Doing so is an unfair labor practice.[3]

The NLRA is silent as to when bad behavior during union activities— *e.g.*, through threats or the use of racial epithets during grievance meetings or picketing—renders those activities unprotected under Section 7 and therefore reasonable grounds for employee discipline. The NLRB has sought to fill that gap by issuing legal rules through adjudications, as is its standard practice. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("The [NLRB], uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through adjudication rather than rulemaking.") (citation omitted). The Board treats its precedents as binding if and until a new majority of the Board deems a precedent incorrect. *See Epilepsy Found. of Ne. Ohio v. NLRB*, 268 F.3d 1095, 1097 (D.C. Cir. 2001) ("It is a fact of life in NLRB lore that certain substantive provisions of the NLRA invariably fluctuate with the changing compositions of the Board.").

---

[3] To carry out the NLRA, Congress created the five-member National Labor Relations Board. The Board and its General Counsel are appointed by the President and confirmed by the Senate. 29 U.S.C. § 153. The General Counsel acts as prosecutor of charges of unfair labor practices. The Board plays a quasi-judicial role, adjudicating, among other disputes, charges brought by the General Counsel. Board members' terms are staggered so that one member's term expires annually. 29 U.S.C. § 153(a). It is customary, although not legally required, that a majority of the Board's members belong to the President's political party, which can ensure that a majority of the Board shares the President's policy views.

Until July 2020, whether a union member's behavior constituted protected activity depended on "setting-specific" standards—*i.e.*, different factors applied depending on where the behavior took place. For workplace outbursts, for instance, the NLRB applied a four-factor standard pronounced in *Atlantic Steel Co.*, which considered "(1) the place of the discussion; (2) the subject matter of the discussion; (3) the nature of the employee's outburst; and (4) whether the outburst was, in any way, provoked by an employer's unfair labor practice." *Atlantic Steel Co.*, 245 N.L.R.B. 814, 816 (1979).

## B.

In May 2020, the Board found that Lion Elastomers had committed unfair labor practices by threatening, disciplining, and discharging an employee, Joseph Colone, for engaging in protected activities. In so holding, the Board adopted an Administrative Law Judge's (ALJ) decision that, among other things, applied *Atlantic Steel* to assess whether Colone's behavior lost its protected status. Lion Elastomers filed a petition for review of the Board's Decision and Order in this court in June 2020.

But on July 21, 2020—before the appeal of the Board's decision had even been briefed—the Board issued *General Motors LLC*, which announced that the agency would no longer use *Atlantic Steel* or other setting-specific standards to assess "whether employers have unlawfully discharged or otherwise disciplined employees who had engaged in abusive conduct in connection with activity protected by Section 7 of the [NLRA]." 369 N.L.R.B. No. 127, 2020 WL 4193017, at *1 (2020). The decision held that the Board would instead apply its *Wright Line* burden-shifting framework, which first requires the General Counsel to make an initial showing that "(1) the employee engaged in Section 7 activity, (2) the employer knew of that activity, and (3) the employer had animus against the Section 7 activity,

which must be proven with evidence sufficient to establish a causal relationship between the discipline and the Section 7 activity." *Id.* at *2. Under *Wright Line*, if the General Counsel makes a *prima facie* case, the burden shifts to the employer to prove that it would have taken the same action absent the Section 7 activity. *Id.* Accordingly, *General Motors* "overrule[d] all pertinent cases to the extent they [were] inconsistent with [the *Wright Line* framework]." *Id. General Motors* determined that the Board would "apply *Wright Line* retroactively to all pending cases in which the Board would have determined, under one of its setting-specific standards, whether abusive conduct in connection with Section 7 activity had lost an employee or employees the [NLRA]'s protection." *Id.* at *17.

The NLRB then filed an unopposed motion to remand the case to the Board "in light of the Board's decision in *General Motors*." The NLRB explained that *General Motors* "overruled *Atlantic Steel* and announced a new framework for analyzing whether an outburst to management in the workplace causes an employee to lose the protection of the [NLRA]" and argued that remand was appropriate so that the Board could "determine whether *General Motors* affects the Board's analysis in this case." The court granted the motion in a single-sentence per curiam order. *Lion Elastomers v. NLRB*, No. 20-60499 (5th Cir. June 15, 2021).

On remand, the Board sought "statements of position" on "the issues raised by the remand." Lion Elastomers filed a brief arguing that the case should be remanded to an ALJ to apply the *General Motors* framework in the first instance or that, alternatively, the Board should reverse the ALJ's findings that Lion Elastomers unlawfully threatened, disciplined, and discharged Colone using the *Wright Line* approach. By contrast, the NLRB's General Counsel argued that the Board should overrule *General Motors* and return to the setting-specific standards that applied before the adjudication.

No. 23-60270

The General Counsel made no effort to apply the *Wright Line* approach to the case or explain how *General Motors* affected the Board's analysis.

Although the Board's letter to parties seeking statements of position did not contemplate response briefing, Lion Elastomers sought leave to file a response addressing the General Counsel's argument that the Board should overturn *General Motors*.[4] But the Board found that Lion Elastomers "ha[d] not presented any circumstances warranting leave to file an answer or reply."

On May 1, 2023, the Board issued a Supplemental Decision and Order in this case that "overrule[d] *General Motors*" and "return[ed] to earlier Board precedent, including *Atlantic Steel*, applying setting-specific standards aimed at deciding whether an employee has lost the [NLRA]'s protection." The Board therefore "reaffirm[ed] [its] original Decision and Order." Board Member Marvin Kaplan dissented.

## II.

"We review *de novo* a district court's interpretation of our remand order, including whether the law-of-the[-]case doctrine or mandate rule forecloses any of the district court's actions on remand." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (internal quotation marks and citation omitted). While much of the relevant case law concerns the scope of remands to district courts rather than administrative agencies, the same standards generally apply. *See FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140–41 (1940); *accord Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002).

---

[4] Lion Elastomers principally argued that they should be entitled to file a response under 29 C.F.R. § 102.46(b)—the Board rule that allows for answering briefs on "exceptions" to be filed within 14 days—and only requested leave "out of an abundance of caution." But it appears that the Board determined that the regulation did not apply.

6

III.

Lion Elastomers argues that the Board exceeded the scope of this court's remand order. According to Lion Elastomers, the Board lacked authority to revisit the correctness of *General Motors* because the remand limited the Board to "determin[ing] whether *General Motors* affects the Board's analysis in this case." Lion Elastomers argues that the Board was not permitted to "ignore . . . applicable law in place at the time of remand . . . by simply changing the standard itself." In other words, according to Lion Elastomers, the Board violated the "mandate rule"—a corollary of the law-of-the-case doctrine. *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) ("[A]bsent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court").

In its Supplemental Decision and Order, the Board read the court's remand more broadly, holding as follows:

> The court's remand did not order the Board to apply *General Motors*, nor did the court decide any issue related to the governing legal standard here. It simply gave the Board the opportunity to determine what legal standard, in its view, was applicable. The Board was entirely free, then, to determine that *General Motors* has no bearing on this case because it was incorrectly decided and is overruled.

Now, on appeal, the NLRB argues that 29 U.S.C. § 160(e) deprives this court of jurisdiction to consider Lion Elastomers's scope-of-the-remand argument because the argument "was not pressed before the Board." *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). According to the NLRB, to preserve its argument, Lion

Elastomers was required to file a motion for reconsideration before the Board prior to any appeal.

The NLRB's argument lacks merit. This court has rejected the notion that this provision of 29 U.S.C. § 160(e) is jurisdictional and instead has characterized it as "an exhaustion of remedies provision." *Indep. Elec. Contractors of Houston, Inc. v. NLRB*, 720 F.3d 543, 550 (5th Cir. 2013); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (holding the Immigration and Nationality Act's exhaustion requirement is nonjurisdictional). And, in any event, Lion Elastomers *did* raise its scope-of-the-remand argument to the Board via its (denied) motion to file an answer to the General Counsel's brief on remand.[5] Indeed, the Board's Supplemental Decision and Order specifically addressed whether its decision exceeded the scope of this court's mandate. Where, as here, the Board is on notice of a party's purportedly unexhausted argument, a motion for reconsideration is not required. *See Indep. Elec. Contractors*, 720 F.3d at 551 ("The purpose of [29 U.S.C. § 160(e)] is to give the Board notice and an opportunity to confront objections to its rulings before it defends them in court."); *Bath Marine Draftsmen's Ass'n v. NLRB*, 475 F.3d 14, 24 (1st Cir. 2007) (holding that a motion for reconsideration was not required to exhaust where the Board had "adequate notice" of the party's position).

We turn now to the merits. The NLRB argues that "the one-sentence per curiam judgment granting remand did not order the Board to apply any

---

[5] The NLRB also claims that Lion Elastomers failed to adequately raise the issue because its argument was underdeveloped and unsupported in its motion to file an answer. But of course it was. The Board denied Lion Elastomers the opportunity to file a brief on the issue, which is precisely where the company would have developed and supported the argument. As Lion Elastomers argues, if anything, it provided the Board greater notice of its argument by raising the scope-of-remand issue *before* the Board issued its Supplemental Decision and Order.

particular standard and did not foreclose the possibility of the Board overruling any particular case." The agency contends this is because "[t]he motion and order granting remand left all options open as it is ultimately the Board's 'central role' [to] balance[e] between employees' right to self-organization and an employer's right to maintain discipline."

True, the Board has been afforded "deference" when engaging in its "special function of applying the general provisions of the [NLRA] to the complexities of industrial life." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975) (internal quotation marks and citations omitted). But the NLRB cites no authority as to why it should be afforded deference in interpreting *this court's remand order*. To the contrary, the Board was bound to "proceed within the letter and spirit of the mandate by taking into account the appeals court's opinion and the circumstances it embraces." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006). And this court reviews *de novo* whether the Board complied with the "letter and spirit" of the remand order. *See United States v. Hoffman*, 70 F.4th 805, 812 (5th Cir. 2023); *see also NLRB v. Donnelly Garment Co.*, 330 U.S. 219, 227 (1947) ("[T]he court that issues a mandate is normally the best judge of its content" because "the author of a document is ordinarily the authoritative interpreter of its purposes").

Looking at the "letter and spirit" of this court's remand order, we disagree with the NLRB's position that the Board was "free to determine that *General Motors* has no bearing on this case because it was incorrectly decided and is overruled." The "circumstances [that the remand order] embraces" are of critical importance. *See Pineiro*, 470 F.3d at 205. It was the NLRB—not Lion Elastomers—that sought remand "in light of the Board's decision in *General Motors LLC*." The agency's remand motion explained that the Board had relied on *Atlantic Steel* when deciding the case below and argued that because the Board overruled *Atlantic Steel* in *General Motors*, the case should be remanded so that the Board could "determine whether

No. 23-60270

*General Motors* affects the Board's analysis in this case." The NLRB's motion gave no suggestion to the court that it intended to seek the overturning of *General Motors*. Rather, the clear implication was that the agency would simply apply the *General Motors* standard to the facts of this case. In determining that *General Motors* did not "affect[] [its] analysis" because the adjudication was wrongly decided was a bait-and-switch. Indeed, if the NLRB intended to defend *Atlantic Steel* and its application to Lion Elastomers, it's unclear why the agency sought remand at all.[6] Said another way, by granting the NLRB's motion for a voluntary remand, this court decided that the NLRB was to apply *General Motors* to this case. *See Lee*, 358 F.3d at 321.

To be sure, the mandate rule does not apply when there has been an intervening change of law by a controlling authority. *Collins v. Dep't of the Treasury*, 83 F.4th 970, 984 (5th Cir. 2023). And, in the context of an agency action, a reviewing court *may* relax the obligation to abide by the mandate rule to permit uniform implementation of a newly developed rule to the extent it was developed in an adjudication *independent* of those controlled by a judicial mandate. 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.3 (3d ed. 2024); *accord Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145–1147 (10th Cir. 2011). Here, however, there was no "intervening" change of authority independent from the adjudication controlled by our mandate. Instead, the Board had sought remand to

---

[6] That the remand order simply granted the NLRB's motion is of no matter. Had Lion Elastomers been on notice that the NLRB intended to revisit the viability of *General Motors* on remand, Lion Elastomers purportedly would have objected to the motion. This court, therefore, would have confronted at that point the question of whether and the extent to which remand was appropriate.

implement a newly developed rule, but rather than implementing the rule, the Board overturned it.

Put simply, the remand order was not an invitation for the Board to reconsider what legal standards should apply but rather an instruction to apply the legal standards set forth in *General Motors*. The Board thus exceeded the scope of the remand by failing to do so.

## IV.

In addition to exceeding the scope of the remand, the Board also violated Lion Elastomer's due-process rights when it decided to overturn *General Motors* without providing the company an opportunity to be heard on the issue.

Under the Fifth Amendment, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks and citation omitted); *see also NLRB v. Smith Indus., Inc.*, 403 F.2d 889, 895 (5th Cir. 1968) ("While the consideration of whether an administrative body must give notice and an opportunity to be heard to interested individuals frequently involves difficulties of statutory interpretation, the ultimate legal problem is whether the procedure utilized satisfies the guarantee of due process of law." (citation omitted)).[7] What

---

[7] The Administrative Procedure Act provides statutory due-process rights too: "Persons entitled to notice of an agency hearing shall be timely informed of . . . the matters of fact and law asserted," and the agency must "give all interested parties opportunity for . . . the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit." 5 U.S.C. § 554(b)–(c). These rights reflect constitutional standards. *Indep. Elec. Contractors*, 720 F.3d at 552.

procedures are required to satisfy due process is context dependent. *Mathews*, 424 U.S. at 334.

The Supreme Court has explained that part of the reason why the Board may pronounce new legal rules through adjudications is because "[t]hose most immediately affected [by the adjudication], the [parties] in [a] particular case, are accorded a full opportunity to be heard" before the Board announces a new policy. *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 295 (1974). Relatedly, "the [NLRB] knows that it cannot change theories in midstream [of an adjudication] without giving respondents reasonable notice of the change." *Indep. Elec. Contractors*, 720 F.3d at 552 (quotation marks and citation omitted). For instance, when the NLRB "has chosen to litigate against a respondent on a narrow theory of liability, and the respondent was reasonably led to believe that it would not have to defend on a broader theory, an ALJ is not free to resolve the case on a broader theory." *Id.*

That logic applies here. Lion Elastomers had no reason to anticipate that the Board would reinstate *Atlantic Steel* on remand: the NLRB had sought remand from the Fifth Circuit specifically so that the agency could apply the *General Motors* standard. The first time Lion Elastomers received notice that the Board may overrule *General Motors* was when the General Counsel submitted its statement of position following remand.[8] Lion Elastomers, therefore, could not have foreseen the need to argue for the continued viability of *General Motors* in its own statement of position. Because the Board denied Lion Elastomers's motion to respond to the

---

[8] Indeed, just two weeks before the NLRB filed its position statement in this case, the Board issued a decision applying *General Motors* in another case where the Board had initially applied *Atlantic Steel* and a court of appeals remanded. *Constellium Rolled Prods. Ravenswood, LLC*, 371 NLRB No. 16 (Aug. 25, 2021).

General Counsel's argument, Lion Elastomers was deprived of a full opportunity to be heard. *See Bell Aerospace*, 416 U.S. at 295.

In fact, the Board's Supplemental Decision and Order appears to concede that Lion Elastomers was not heard on the issue of whether *General Motors* should be overruled. The Board also held, however, that no due-process problem existed because Lion Elastomers "was not prejudiced by the Board's action." According to the Board, because the agency simply returned to the law under which the case was originally decided, its failure to give Lion Elastomers the opportunity to argue against such action was harmless. But that's not how due process works. A due-process violation "is not remedied by observing that the outcome would perhaps or even likely have been the same" absent the violation. *NLRB v. Complas Indus., Inc.*, 714 F.2d 729, 734 (7th Cir. 1983) (quoting *Rodale Press, Inc. v. FTC*, 407 F.2d 1252, 1257 (D.C. Cir. 1968)). Rather "[i]t is the *opportunity* to present argument under the new theory . . . [that] must be supplied." *Id.*

On appeal, the NLRB continues to hang its hat on a purported lack of prejudice to Lion Elastomers. First, the NLRB argues that Lion Elastomers did not file a motion for reconsideration below addressing due process, failing to exhaust the argument and thus requiring a showing that the company was prejudiced by the procedural violation. But as Lion Elastomers rightly points out, due process ensures parties a right to be heard *before* a decision is made, not after. Here, Lion Elastomers was deprived of a pre-decision opportunity to be heard. The fact that it could have complained after the fact via a motion for reconsideration is of no consequence. Moreover, Board Member Kaplan led his dissent with a section dedicated to Lion Elastomers's due-process rights, stating "that [Lion Elastomers]'s due process rights [were] being violated by the majority's decision to use this case to overrule *General Motors*" and that Kaplan "ha[d] serious concerns whether the decision [would] survive judicial review on due process grounds." So, the Board was

clearly on notice that Lion Elastomers's due-process rights were implicated. Nonetheless, the Board proceeded to overturn *General Motors* without Lion Elastomers's input.

Second, the NLRB asserts that Lion Elastomers was not prejudiced because the NLRB "merely returned to the law as it stood when Lion [Elastomers] disciplined and discharged Colone."[9] This argument ignores the posture of this case and the nature of the harm at issue. At the NLRB's request, this court remanded the case to the Board for it to apply a new legal standard—*General Motors*—that was announced between the close of the adjudication and briefing on appeal. But that's not what the Board did on remand. Instead, without accepting any arguments from Lion Elastomers on the issue, it decided that *General Motors* did not apply at all. So, while Lion Elastomers may not have been prejudiced by the mere fact that the Board decided to return to the *Atlantic Steel* standard, it *was* prejudiced by the fact that it essentially had no say in that outcome.

Finally, the NLRB argues that Lion Elastomers had no substantive right to have the *General Motors* standard applied to its case and, therefore, that no due-process violation occurred here. Given that the Board exceeded the scope of this court's remand, Lion Elastomers had at least some interest in the Board applying *General Motors* during the remand proceeding. But regardless, this argument again misses the point. Lion Elastomers is not arguing that the Board's failure to apply *General Motors* constitutes a due-process violation. Rather, Lion Elastomers is arguing that it had no opportunity to be heard before the Board decided to overturn *General Motors*.

––––––––––––––––––––––

[9] The Union, as intervenor on appeal, raises a similar argument, contending that Lion Elastomers was not deprived of due process because the Board simply applied the same legal standard—*Atlantic Steel*—that it used in the initial adjudication.

No. 23-60270

Lion Elastomers's asserted due-process violation was its loss of the "chance to persuade" the Board not to overturn *General Motors* in the first place.

The bottom line is that the Board's ability to change policies via adjudication is premised on the assumption that the parties to that adjudication will be "accorded a full opportunity to be heard before the Board makes its determination." *Bell Aerospace*, 416 U.S. at 295. Lion Elastomers was afforded no such opportunity here.

## V.

For the foregoing reasons, we VACATE the Board's Supplemental Decision and Order and REMAND for the Board to apply *General Motors* to this case.[10]

_____

[10] We need not reach the question of whether *Atlantic Steel* comports with the NLRA or other federal laws. We also decline to reach the question of whether the agency's Decision and Order are supported by substantial evidence.