# United States Court of Appeals
# for the Fifth Circuit

————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2025

Lyle W. Cayce
Clerk

No. 24-30720
Summary Calendar

————————

First Baptist Church of Iowa, Louisiana,

*Plaintiff—Appellee*,

*versus*

Church Mutual Insurance Company, S.I.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-2472

_____

Before Richman, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

After Hurricane Laura caused extensive damage to its property, First Baptist Church of Iowa, Louisiana (the Church) sued Church Mutual Insurance Company, S.I. (CM Insurance) for failing to pay the Church's insurance claim. The district court found in favor of the Church after a bench trial. In a prior appeal, we affirmed in part and reversed in part, remanding

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30720

for a recalculation of damages.[1]  On remand, the district court entered an amended judgment with a revised damages calculation.  CM Insurance appealed the revised damages award for electrical repairs.  We affirm.

**I**

The Church's property consists of three buildings: the church building, which is relevant to this appeal, as well as a parsonage and a third vacant building.  The church building includes numerous rooms, including the sanctuary, fellowship hall, classrooms, offices, and a nursery.  Hurricane Laura caused extensive damage to the property when the storm hit Iowa, Louisiana, on August 27, 2020.  The Church was insured by CM Insurance.  The policy's valuation clause stated that CM Insurance would "determine the value" of the covered property "as of the time of loss or damage."

Following a protracted dispute regarding how much CM Insurance owed to repair the damaged property, the Church sued CM Insurance for failing to pay the amount allegedly owed.  We discussed the details of the parties' original conflict and trial in *First Baptist Church of Iowa v. Church Mutual Insurance* (*First Baptist Church I*)[2] and will only repeat the facts relevant to the present appeal.

The Church hired an electrician, Dylan Guidry, to repair the electrical system in the sanctuary.  Guidry submitted a bid to repair the electrical system in the sanctuary only—he testified that he did not prepare a bid for the remainder of the church building, such as the fellowship hall, classrooms, and offices.  Ultimately, he performed the labor to repair the electrical system

---

[1] *See First Baptist Church of Iowa v. Church Mut. Ins.* (*First Baptist Church I*), 105 F.4th 775 (5th Cir. 2024).

[2] 105 F.4th 775 (5th Cir. 2024).

in the sanctuary for free, and the Church repaid him $4,500 for the cost of his materials.

The district court found in favor of the Church as to liability. To aid the court in calculating damages during the first bench trial, each party offered evidence from a damages expert. The Church offered an estimate from a licensed insurance adjuster and damages consultant, Harper Chambers, whose estimate used a price list from January 2023 to project repair costs. CM Insurance offered an estimate from a construction consultant, Brett O'Steen, whose estimate used a price list from September 2020 to project repair costs. The district court relied on the Chambers estimate and rejected the O'Steen estimate. The Chambers estimate stated the total square footage of "Premises 1 Building 1," the church building, and projected a total cost of $164,235.42 to repair the electrical system in "Premises 1 Building 1." The district court did not revise that number. It ultimately found that CM Insurance owed the Church an additional $883,947.89, beyond what it had already paid under the policy, for covered damages to the Church's property. CM Insurance appealed the adverse judgment.

On appeal, we affirmed the district court's judgment in part and reversed and remanded in part.[3] As relevant here, we held that "the district court erred in awarding damages based on prices in January 2023 instead of at the time of loss," which occurred on August 27, 2020, and in awarding "in excess of $4,500 for the sanctuary's electrical repair."[4] We then remanded the case "for recalculation of damages."[5]

_____

[3] *Id.* at 797.

[4] *Id.*

[5] *Id.*

No. 24-30720

On remand, the district court ordered the parties to file supplemental briefs "as to their recalculation" of damages "in accordance with the Fifth Circuit's ruling". The Church responded with a revised estimate from Chambers; whereas Chambers's original estimate had used a price list from January 2023, the revised estimate used a price list from September 2020—the same price list that the O'Steen estimate had used at trial. In that revised estimate, Chambers estimated the electrical repairs to discrete areas within "Premises 1 Building 1" based on square footage. The new estimate listed (1) a cost of $4,500 to replace the electrical system in the 2,436-square-foot sanctuary, (2) a projected cost of $12,959.35 to remove the old electrical system from the other portions of the church building, and (3) a projected cost of $77,436.82 to replace the electrical system in the other portions of the church building. (The damages for the non-sanctuary spaces were projected because, at least as of the trial, the portions of the church building other than the sanctuary remained unrepaired.) CM Insurance objected to the admission of this estimate. The district court held a hearing, after which CM Insurance submitted its own revised estimate using a price list from August 27, 2020, the day Hurricane Laura struck. This revised estimate listed a cost of $4,500 to replace the electrical system in the 2,436-square-foot sanctuary and a cost of zero dollars to remove and replace the electrical system in the remaining portions of "Premises 1 Building 1."

The district court rejected CM Insurance's proposed estimate on the ground that it "would require the Court to use information Defendant did not have admitted at the trial of this matter." The district court accepted the Church's revised estimate because it was "the only estimate offered at the trial of this matter by [CM Insurance] and is the O'Steen estimate that employs the exact same September 2020 price list." The district court also accepted the Church's proposed recalculation of the electrical repairs for the church building and rejected CM Insurance's argument that this court had

No. 24-30720

intended to restrict damages for electrical repairs to the entire church building to $4,500.  CM Insurance timely appealed.

## II

CM Insurance first argues that the district court violated the law-of-the-case doctrine and the mandate rule by awarding more than $4,500 in damages for electrical repairs to the church building.  The Church contends that the district court followed this court's mandate by limiting damages for electrical repairs to the sanctuary to $4,500 and permitting the Church to recover further damages for electrical repairs in other parts of the church building.

"We review de novo a district court's interpretation of a remand order, including whether the law-of-the[-]case doctrine or mandate rule forecloses any of the district court's actions on remand."[6]  The law-of-the-case doctrine "dictates that 'a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court.'"[7]  This doctrine requires that a district court "abstain[] from reexamining an issue of fact or law that has already been decided on appeal."[8]  The "proscription applies regardless of whether the issue was decided explicitly or by necessary implication."[9]  "Relatedly, '[t]he mandate rule requires a district court on remand to effect our mandate and

---

[6] *Franklin v. Regions Bank*, 125 F.4th 613, 629 (5th Cir. 2025) (alteration in original) (italics omitted) (quoting *Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252, 257 (5th Cir. 2024)).

[7] *Id.* (quoting *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967)).

[8] *Id.* (alteration in original) (quoting *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015) (per curiam)).

[9] *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001).

to do nothing else.'"[10]   Under the mandate rule, "[a] district court on remand 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'"[11]

In *First Baptist Church I*, we described the Church's property as including three buildings, and we noted that the church building included multiple spaces.[12]  Specifically, we stated that one of three buildings owned by the Church is "the main building (the church)," which we described as "includ[ing] a sanctuary, fellowship hall, classrooms, nursery, kitchen, bathrooms, and offices."[13] Regarding electrical repairs to the church building and the sanctuary, we wrote,

> CM Insurance objects to the award of $164,235.42 for removing and replacing electrical wiring of the sanctuary, arguing FB Church's Expert's estimate inflated the costs of electrical repairs.  There was no testimony from FB Church's Expert about this part of the estimate, and his report does not include a narrative describing the current or past condition of the sanctuary's electrical system.  The electrician who performed that work, Dylan Guidry, testified that he removed and replaced all the electrical wiring in the sanctuary, but that he never submitted a bid for the remainder of the church building.  Although he initially submitted a $26,800 bid for the sanctuary work, including materials and labor, he ultimately

---

[10] *Franklin*, 125 F.4th at 630 (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018) (per curiam)).

[11] *Perez*, 784 F.3d at 280 (quoting *United States v. McCrimmon*, 443 F.3d 454, 459 (5th Cir. 2006)).

[12] *See First Baptist Church I*, 105 F.4th 775, 782 (5th Cir. 2024).

[13] *Id.*

No. 24-30720

did not charge FB Church for labor, and Guidry ultimately charged FB Church only $4,500, which it paid.

> FB Church argues that Guidry only replaced the electrical system for the sanctuary, and not the rest of the main building—which includes the fellowship hall, classrooms, and offices—or the parsonage. Guidry suggested as much in his deposition, and there is no evidence in the record to support CM Insurance's position that Guidry "removed and replaced *all* the electrical wiring in the church building." And FB Church's Expert's estimate for electrical repairs indicates that it is only for the sanctuary and does not include any electrical work involving the other parts of the main building or the parsonage. But that is precisely the work that was done by Guidry at a cost to FB Church of only $4,500. Any award in excess of $4,500 for electrical repairs *in the sanctuary* is clearly erroneous.[14]

Ultimately, we held that "[b]ecause the district court erred in awarding . . . damages in excess of $4,500 *for the sanctuary's* electrical repair, we REVERSE that portion of the district court's decision and REMAND for recalculation of damages."[15]

Our description of the church building as including (but not solely consisting of) the sanctuary, coupled with our discussion of Guidry's testimony, shows that we recognized that he repaired only the electrical system in the sanctuary. We were not under the impression that he had repaired the electrical system in the rest of the church building, which remained unrepaired, at least at the time of trial. Yet we explicitly stated that "[a]ny award in excess of $4,500 for electrical repairs *in the sanctuary* is

---

[14] *Id.* at 790-91 (second emphasis added).

[15] *Id.* at 797 (emphasis added).

7

clearly erroneous,"[16] rather than deeming it clearly erroneous to award damages in excess of $4,500 for electrical repairs in other parts of the main church building.

CM Insurance's arguments pertaining to the labels in Chambers's estimates do not alter this reading. CM Insurance argues that Chambers's original estimate labeled all damages in the church building as damages to "the Sanctuary," so the electrical repairs estimate pertained only to electrical repairs in the sanctuary. CM Insurance further claims that the Church relabeled the building "Premises One, Building One" in the revised damages estimate on remand to disguise this inconsistency. But Chambers labeled the church building as "Premises 1 Building 1" in both the original and revised estimates. To be sure, Chambers appears to have retitled the revised estimate document as "FBC_IOWA-APPEALS_820," whereas the original estimate's document title was "FBC_IOWA_SANCTUARY." We know that change pertained to the title of the entire document, not just the label to "Premises 1 Building 1," because it appears in both the title pages of the estimates and in the footer of every page of the estimates, including on pages describing damages to "Premises 2 Building 2"—the parsonage—and "Premises 3 Building 3." Chambers further testified at trial that his estimate for "Building No. 1" was for "the church building with the sanctuary, the fellowship hall, and classrooms, and other rooms." We do not regard Chambers's retitling the document to reflect the ongoing appeal as an effort to trick the district court.

Given that we only restricted the district court from awarding more than $4,500 in damages for electrical repairs *to the sanctuary*, the district

---

[16] *Id.* at 791 (emphasis added).

court did not err in its interpretation of our mandate by contemplating further damages for electrical repairs to the remainder of the church building.

### III

CM Insurance next argues that the district court erred by considering the Church's revised estimate despite not admitting it as evidence while refusing to consider CM Insurance's "countervailing estimate."

In advancing this argument, CM Insurance first claims that the district court's amended judgment is "not supported by the evidence" and is therefore erroneous because it is based on "an attachment to a post-appeal pleading" rather than on evidence the Church offered at trial. The Church responds that the revised estimate is not new because it is merely the "original adjustment adopting the new pricing date, deleting items ordered deleted, and segregating the cost of electrical repairs in the sanctuary and all other electrical repairs" while the "square feet, the items of damages, the scope of work, and all other aspects of the adjustment remained the same." The district court, too, did not view this adjustment as new, stating that the Church relied only on "evidence in the record"—namely the September 2020 price list used in the O'Steen estimate offered by CM Insurance and the square footage provided in the original Chambers estimate and agreed upon by both parties—to adjust the price of electrical repairs. CM Insurance responds to neither of these contentions and instead insists that the evidence must be "a new document" because it differs from the original Chambers estimate. In so insisting, CM Insurance ignores the explanation from the district court that the information for the revised estimate came from CM Insurance's own estimate admitted at trial and fails to show what aspects of the revised estimate were allegedly new beyond that which the Church and the district court accounted for. Furthermore, the caselaw that CM Insurance cites to support this argument is inapposite. Based on this

No. 24-30720

showing, we cannot agree with CM Insurance that the district court erred on this point.

CM Insurance further argues that, at the very least, it was "denied due process in being denied the chance to conduct discovery on this new evidence, depose the witness, cross examine the witness, defend against this new claim for damages or offer contrary evidence." To support this argument, CM Insurance describes the situation as "analogous to the consideration of additional evidence in a summary judgment proceeding but denying the opponent the opportunity to present countervailing evidence and a meaningful chance to respond." CM Insurance's cited authority, however, pertains to the separate legal issue of introducing new evidence in a reply brief during summary judgment and class certification proceedings.[17] Moreover, CM Insurance cross-examined Chambers about his original estimate during trial, did not ask the district court for another chance to depose or cross-examine him again on remand, and was given multiple opportunities in the district court on remand to argue its position regarding damages for electrical repairs in the church building. Given these facts, we disagree that the district court failed to allow CM Insurance to adequately respond to the Church's revised damages estimate.

Lastly, CM Insurance argues that the district court erred in refusing to consider CM Insurance's own revised estimate. When CM Insurance

---

[17] *See Cummings v. Elec. Ins. Co.*, No. 1:18-CV-00786, 2020 WL 5505652, at *2 (W.D. La. Sept. 11, 2020) ("When summary judgment evidence is provided for the first time attached to a reply brief, Courts have discretion whether or not to consider the new evidence; if the evidence is considered, the nonmovant must be given an opportunity to respond to the new evidence." (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004))); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (holding the district court abused its discretion by denying a party leave to file a sur-reply when the opposing party's reply brief presented new evidence).

offered this estimate on remand, the trial record was closed, so we interpret CM Insurance's proposal of that estimate as a motion to reopen the record. Consequently, we construe CM Insurance's argument that the district court erred in not considering the estimate as an argument that the district court erred in refusing to reopen the record, a construction supported by the authority CM Insurance relies on to support this point.[18]

"We review a district court's ruling on a party's motion to reopen the record for abuse of discretion."[19] "'[W]here further proceedings are contemplated by an appellate opinion, the district court retains the discretion to admit additional evidence' unless bound by a specific mandate that restricts subsequent proceedings."[20] In reviewing a district court's refusal to reopen a case in a somewhat similar situation, following a party's successful Rule 50 motion, we stated we would not "disturb[]" the district court's decision "in the absence of a showing that it has worked an injustice in the cause."[21]

---

[18] *See Franklin v. Regions Bank*, 125 F.4th 613, 630 (5th Cir. 2025) (stating that a party's suggestion that "district courts cannot ever consider new theories of damages or damage evidence on remand . . . . runs headlong into this court's precedent, previously accepted practices, and common sense").

[19] *Chieftain Int'l (U.S.), Inc. v. Se. Offshore, Inc.*, 553 F.3d 817, 820 (5th Cir. 2008) (reviewing for abuse of discretion a district court's refusal to reopen the summary judgment record); *see United States v. Bell Petroleum Servs., Inc.*, 64 F.3d 202, 204 (5th Cir. 1995) ("Where further proceedings are contemplated by an appellate opinion, the district court retains the discretion to admit additional evidence."); *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 551 (1983) ("On remand, the decision on whether to reopen the record should be left to the sound discretion of the trial court.").

[20] *Franklin*, 125 F.4th at 630 (citation omitted) (first quoting *Bell Petroleum*, 64 F.3d at 204; and then citing *United States v. Wilson*, 322 F.3d 353, 360 (5th Cir. 2003)).

[21] *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996) (quoting *Gas Ridge, Inc. v. Suburban Agric. Props., Inc.*, 150 F.2d 363, 366 (5th Cir. 1945)).

No. 24-30720

Here, the prior panel imposed the following restrictions in its mandate: the district court was to recalculate damages using prices from "the time of loss," the district court could not award damages for slab repair, and the district court could not award damages "in excess of $4,500 for the sanctuary's electrical repair."[22] These instructions did not prohibit the trial court from considering new evidence regarding damages on remand,[23] so it was within the district court's discretion to reopen the record. The question becomes whether the district court abused that discretion in not reopening the record.

CM Insurance argues that the district court abused its discretion in refusing to consider this proffered evidence because it was "patently unfair and prejudicial" to consider the Church's revised estimate without considering CM Insurance's revised estimate. But CM Insurance does not acknowledge or respond to the district court's reasoning in accepting the Church's revised estimate that Chambers had merely relied on information already admitted into evidence at trial: the original Chambers estimate revised with the September 2020 price list that CM Insurance introduced at trial and the undisputed square footage of the church building and sanctuary. Furthermore, the limited probative value of CM Insurance's revised estimate in shedding light on the single issue on appeal—the award of damages for electrical repairs in the church building—also weighs against viewing the district court's refusal as an abuse of discretion. CM Insurance's

---

[22] *First Baptist Church I*, 105 F.4th 775, 797 (5th Cir. 2024).

[23] *Compare id.*, *with Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 349-50 (5th Cir. 2020) (per curiam) (holding that the district court "did not err when it refused to consider new damages theories or damages evidence" on remand "other than the Janik Report" when this court's mandate had "le[ft] it to the district court to determine whether the Janik Report is admissible, and if it is admissible, whether it establishes lost profits with reasonable certainty").

proffered evidence consisted of the following: (1) an affidavit by a new expert explaining his methodology in generating the proposed estimate; (2) the new expert's resume; (3) instructions from the estimate-generating software about selecting a price list; (4) a revised estimate using a price list from August 27, 2020, that awards only $4,500 for electrical repair work in "Premises 1 Building 1"; and (5) a list of "anomalies" the new expert had uncovered in Chambers's revised estimate regarding damages to "wall coverings," "[i]nterior door[s] and lockset[s],"and an "[e]xterior door and lockset" but not mentioning any anomalies in the damages estimate for church building electrical repairs.  The only information in this evidence that is pertinent to damages for electrical repairs in the church building is the three line items in the proposed damages estimate allocating $4,500 for electrical repairs in the sanctuary and zero dollars for electrical repairs in the rest of the church building.  But CM Insurance argued this point repeatedly on remand in the district court even without the admission of this evidence into the record.  Because CM Insurance has failed to show that the revised Chambers estimate provided any new information relied upon by the district court and failed to show that its own revised estimate would have provided probative information about the relevant issue, we cannot say the district court's ruling was "patently unfair and prejudicial."

Ultimately, we cannot say that the district court's refusal to consider CM Insurance's revised estimate "worked an injustice in the cause."[24]  The district court seriously considered the argument that our prior panel had meant to restrict damages for electrical repairs in the church building to $4,500, and that is the only issue with the damages award that CM Insurance raised on appeal.  The proffered evidence was minimally probative and likely

_____

[24] *Garcia*, 97 F.3d at 814 (quoting *Gas Ridge*, 150 F.2d at 366).

No. 24-30720

would not have altered the outcome of the case with regard to that single issue. Therefore, the district court did not abuse its discretion in refusing to reopen the record to consider this evidence.

\*    \*    \*

We AFFIRM the judgment of the district court.